**STATE ex HERBERT, Attorney General, Appellant v. SAUNDERS, d. b. a. ELDEN C. SAUNDERS LINOLEUM CO., Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6257.' Decided May 24, 1943.

Thomas J. Herbert, Columbus, Robert E. Hall, Columbus, and Edward A. Schott, Cincinnati, for appellant.

Hoover, Beall & Whitman, Cincinnati, for appellee.

## OPINION

By HILDEBRANT, J.

Plaintiff, appellant, brought suit in the Court of Common Pleas of Hamilton county Ohio, under favor of §1465-74 GC, to recover the amount of an award made by the Industrial Commission of Ohio, to an employee of a non-complying employer, injured in the course of his employment. The trial court granted the motion of defendant, appellee, for a directed verdict and the cause is here on appeal on questions of law.

On March 25, 1940, a representative of the Industrial Commission of Ohio obtained from defendant, an amenable non-complying employer, his application for classification of industry and for premium. On April 8, 1940, the commission billed defendant for premium in amount of $99.92, based on an estimated eight months payroll period, with attached authorization to the State Treasurer, the custodian of the fund, to receive the same.

On July 31, 1940, the State Treasurer received the check of defendant, payable to Workmen's Compensation, Industrial Commission of Ohio, bearing date of July 23, 1940, as shown by the State Treasurer's date received stamp on the face of the check. Also on the face of the check appears another date received stamp as of July 31, 1940, with nothing further appearing from the exhibit to show by whom received. Plaintiff contends this latter stamp to be that of the Industrial Commission of Ohio, and defendant merely claims to be unable to find an Industrial Commission date received stamp thereon. On July 26, 1940, defendant's employee admittedly received an injury in the course of and arising out of his employment.

On August 6, 1940, a certificate of Premium Payment was issued by the commission to defendant, certifying his having paid the required premium as of August 1, 1940, and that he was entitled to the rights and benefits of the fund for a period of eight months,

beginning August 2, 1940. Defendant testified with reference to the mailing of the check that is was mailed July 24, 1940, and, on cross-examination stated he offered to send the injured workman to his, defendant's doctor, and to pay the bill, denying he did this to avoid trouble with the Industrial Commission, for not being paid up, but explaining it was to avoid difficulty with the commission as he had not received his certificate of Premium Payment.

The sole question here is, was defendant entitled to the benefits of the Act on July 26, 1940, the date of the injury, or on what date under the above facts did the insurance coverage attach?

It can readily be seen that in coming to administer the Industrial Commission and Workmen's Compensation Law there is the practical necessity of very primary importance, inherent in the law itself, of knowing when coverage attaches. The Industrial Commission by Rule 5 of its General Procedure Rules has fixed the time as follows:

"The applicant's protection shall date from the following weekday, not a holiday, after the day on which the payment of premium is actually received by the Treasurer of State."

If the judgment of the court below be correct, then Rule 5 is void and of no force or effect.

Article II, Section 35, of the Ohio Constitution, provides in part:

"For the purpose of providing compensation to workmen and their dependents for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. Such compensation shall be in lieu of all other rights to compensation, or damages. for such death, injuries or occupational disease, and any employer who pays the premium or compensation provided by law, passed in accordance herewith, shall not be liable to respond in damages at common law or by statute for such death, injuries or occupational diseases. Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard. to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all rights of claimants thereto."

The primary and express purpose of the constitutional provision is to provide compensation to workmen and the incidental or correlative benefits accruing to the employer in the form of relief from certain common law or statutory liabilities runs, accord-

ing to the language of the constitution, only to him, "who pays the premium."

Pursuant to constitutional authority to pass laws to collect, administer and distribute the fund, §1465-69, GC, provides for premium payments semi-annually and that the Certificate of Premium payment be prima facie evidence of compliance, and, further, that anyone contracting with the state or any political subdivison thereof shall, before commencing work, first furnish the public authority with such certificate showing payment of premium    This reveals the intent of the legislature to make payment of premium the test of compliance with the law.

**Section 1465-55 GC,** provides in part:

"The industrial commission of Ohio shall adopt rules and regulations with respect to the collection, maintenance and disbursements of the state insurance fund among which rules and regulations shall be the following:
\*    \*    \*

2. A rule providing that the premium collected from any employer at the beginning of any six months' period shall entitle such employer to the benefits of this act for such period of six months and also for an additional adjustment period of two months, during which period the adjustment provided for in subsection 3 of this section shall be made; that such premium may be ascertained and calculated by using as a basis therefore one and one-third times the amount of the estimated expenditure of wages for such six months' period, or such premium may be ascertained and calculated on a basis of an estimated expenditure of wages for eight months in advance of the beginning of any six months' period.
\*    \*    \*

5. Such special rules as the commission may consider necessary to safeguard the fund and just in the circumstances covering the rates to be applied where one employer takes over the occupation or industry of another or where an employer first makes application for state insurance and the commission may require that if any employer shall transfer his business in whole or in part or shall otherwise reorganize such business, the successor in interest shall assume (in proportion to the extent of such transfer as determined by the commission) such employer's account and shall continue the payment of all contributions due under this chapter."

It will be seen that by paragraph 2 the law specifically says it is the premium collected which entitles the employer to the benefits of the fund and not the premium in process of being ascertained and assessed, and goes on to provide an adjustment period giving time to ascertain and pay premium thereby obviating excuse for failure to pay and preventing default and non-compliance.

By paragraph 5, the commission is specifically granted the au-

thority to make special rules covering, amongst other things, original or first applications.

Paragraph 6-B goes on to direct that premium found due is payable on or before the date to which the advance premium has been paid—further evidencing the intent to make payment the test of compliance.

Section 1465-74 GC, gives the right to any employee whose employer "has failed to comply" with §1465-69 GC, that is, to make premium payments, to, in lieu of a civil action for damages versus the employer, make application for and receive an award from the State Insurance Fund. Again is seen the intent to make payment of premium the vital factor in determination of the fact of compliance.

Defendant contends that under §1465-75 GC, which outlines the procedure for fixing and collecting the premium from an employer found amenable to the act, rendered defendant civilly liable for payment of premium from April 8, 1940, the date of the commission's finding of premium due, and in consideration therefor coverage attached and seeks to substantiate that contention by application of general principles of insurance law, as set forth in 22 O. Jur. 495, as follows:

"Consequently, payment of, or agreement to pay, a premium is a condition precedent to, or at least concurrent with, an assumption of liability, and conversely, no premium is due unless the risk attaches."

In 32 C. J. 1208, the following language is found:

"To impose a liability for premiums it is essential that the company shall have incurred a liability to insured by a contract which is not affected by any infirmity which the company may interpose as a defense to an action on the policy, this liability constituting the consideration of insured's promise to pay premiums."

And in the case of **Metropolitan Life Insurance Co. v. Felix, 73 Oh St 46**, the first paragraph of the syllabus is:

"To constitute a consideration for the payment of premiums on a policy of life insurance it is essential that the insurer incur a liability by a contract which is not affected by any infirmity which it may elect to interpose as a defense to an action on the policy if the life insured should end."

This court has no quarrel with the law as set forth in the above citations, but does not believe it applicable to the instant case under so-called Workmen's Compensation Insurance.

The above is based on a contractual relation between two parties, where the obligation to pay premium and the assumption of the

risk are concurrent and create reciprocal rights and duties at the same instant, one of which cannot logically arise in the absence of the other, each being the consideration for the other. However, here there exists, by virtue of the law, a three way relationship between the State, represented by the Industrial Commission, the employer, and the employee, whom it is sought to protect. The law creates the obligation of defendant to comply by payment of premium according to its terms, and the employee is protected by the fund, whether the employer .complies or not, and the employer derives the benefit of the law only on compliance with the terms thereof, that is, when he becomes an employer mentioned in the constitution "who pays the premium."

The liability to pay, therefore, is not dependent on the reciprocal assumption of a risk, but is created by the law itself.

Defendant's contention would ground liability to pay premium and attach coverage to mere intention to comply, as evidenced by the application for classification of industry and for premium, yet the record here discloses that some three months passed from April 8, 1940, the date of the commission's finding before tender of premium payment was made, which delay is as referable to a reluctance to pay premium at all, as to any other cause. Obviously, there is an element of time involved in perfecting coverage under the law, and the mechanics of classification of industry, determination of premium, and enforcement of collection cannot create the liability, but can only be invoked to compel compliance with an existing liability created by the law itself. It appears that payment of premium is the very life of the law itself and logically the test as to the time coverage attaches.

Not only does the Industrial Commission have the power but it is specifically enjoined by law to make rules and regulations necessary and incident to competent administration and as long as those rules and regulations are not inconsistent with general law, they are valid and binding and have the force and effect of law.

Rule 5, quoted above, appears to the court to be thoroughly consistent with the constitution and statutes which contemplate the actual payment of premium as the vital act of compliance from which point the coverage attaches and the benefits to the employer accrue. The same is, therefore, hereby upheld as a valid and subsisting rule.

The trial court having for the benefit of this court found the correct amount involved to be $380.38, the judgment of the court below will be _reversed, and this cause remanded with instructions to enter judgment for plaintiff in that amount.

ROSS, P. J., and MATTHEWS, J., concur.