PERRY, ADMR., APPELLEE AND CROSS-APPELLANT, *v.* S.S. STEEL PROCESSING CORP., APPELLEE, ET AL.; DELTA BRANDS, INC., APPELLANT.

(Nos. 51848, 51862 and 52076— Decided June 29, 1987.)

*Charles Kampinski,* for appellee and cross-appellant Kenneth Perry, Sr.

*Douglas P. Whipple,* for appellee S.S. Steel Processing Corp.

*Ronald Isroff,* for appellant Delta Brands, Inc.

PRYATEL, P.J. Plaintiff-appellee and cross-appellant, Kenneth Perry, Sr., brought an action in the court of common pleas alleging the wrongful death of his son, Kenneth Perry, Jr.

On December 5, 1984, plaintiff's decedent was working as a "slitter helper" at the premises of S.S. Steel Processing Corp. on a "steel coil slitting line." A slitting line consists of three basic components. The first component is an "uncoiler," which horizontally dispenses large rolls of sheet steel that are up to five feet wide and weigh several thousand pounds. Several feet from the uncoiler stands the "cutter," which is a large device containing shears which slit the five-foot-wide sheets into numerous strands of narrower steel. On the opposite side of the cutter from the uncoiler stands the "recoiler," which recoils the now many narrower strips of sheet steel onto a common drum. The recoiler has an ingoing "nip point" where the steel meets the recoiler drum.

Due to variations in the thickness or quality of the steel sheeting at various points along its cross-section, there may be uneven tension on the different strands of steel to be recoiled. The differing amounts of tension will cause some of the strands to sag between the cutter and recoiler, which, if not corrected, will cause the strips to be improperly recoiled, and will present problems in eventual use.

To even out the tension, the decedent was instructed to insert pieces of cardboard into the machine while the slitting line was operating. While inserting cardboard, the decedent came against the slitting line, was pulled into the recoiler and rolled up with the steel and crushed to death.

The steel coil slitting line was designed, manufactured, sold and installed by defendant-appellant, Delta Brands, Inc., in 1979. The machine was sold without a guard, and none was ever installed.

The Perry estate's suit for wrong-

ful death proceeded to trial against his employer (S.S. Steel) on theories of negligence (the estate alleged that S.S. Steel was a noncomplying[1] employer within the meaning of the workers' compensation statutes) and intentional tort; and against the manufacturer (Delta Brands) on theories of negligence (failure to adequately warn of the inherent dangers of the product and failure to provide a guard contrary to applicable industry and government standards) and strict liability for defective design. The matter was tried to a jury which returned a verdict in favor of plaintiff against both defendants, jointly and severally, in the sum of $1,362,750. The jury apportioned liability sixty-three percent against Delta Brands and thirty-seven percent against S.S. Steel. The jury found that Delta Brands was liable on plaintiff's theories of strict liability and negligence, and that S.S. Steel was a noncomplying employer, and was liable on the negligence theory. The jury further found that S.S. Steel had not committed an intentional tort.

On February 10, 1986, S.S. Steel filed a motion for judgment notwithstanding the verdict arguing that the issue of whether S.S. Steel was a complying employer should not have been submitted to the jury, since S.S. Steel had received a certificate of premium payment from the Workers' Compensation Bureau. In an order journalized on March 6, 1986, the court granted the motion, holding that the issue should not have been submitted to the jury, ruling as a matter of law that· S.S. Steel was a complying employer and, hence, not liable for

negligence for a work-related injury. The court also held "the jury's finding of the respective percentages of fault is set aside and held for naught."

On February 19, 1986, plaintiff filed a motion for prejudgment interest. The motion was heard on May 19, 1986, and denied on May 20, 1986. Plaintiff cross-appealed from this denial.[2]

Delta Brands raises six assignments of error.

Plaintiff raises two cross-assignments of error.

This case was argued on March 3, 1987. While the opinion was in circulation, it was recalled upon information that a partial settlement had been reached among the parties, removing from review five of the six assignments of error and one of the two cross-assignments of error. The two issues remaining deal with the claimed errors of the trial court (1) in granting S.S. Steel's motion for judgment notwithstanding the· verdict and (2) denying contribution sought by Delta Brands from S.S. Steel. We limit our opinion accordingly.

Appellant's remaining assignment of error is as follows:

"VI. The trial court erred in granting defendant S.S. Steel Processing Corporation's motion for judgment notwithstanding the verdict, and in overturning the jury's verdict against S.S. Steel."

Restated, appellant's assignment of error asks: Does the failure to include the deceased employee on its payroll report render S.S. Steel a noncomplying employer?

R.C. 4123.35 requires that the

---

[1] The estate asserted that S.S. Steel was a noncomplying employer for its failure to include the deceased employee in a payroll report.

[2] Delta Brands' notice of appeal has been designated as case No. 51848. Plaintiff's notice of appeal from the trial court's

grant of judgment notwithstanding the verdict in S.S. Steel's favor and cross-appeal have been designated as case No. 51862, and plaintiff's notice of appeal from the prejudgment interest ruling has been designated as case No. 52076. These appeals have been consolidated.

employer tender semiannual premium payments and provides that the certificate of premium payment is prima facie evidence of compliance. This section reveals the intent of the legislature to make premium payment the test of compliance with the law. *State, ex rel. Herbert,* v. *Saunders* (1943), 72 Ohio App. 413, 416, 39 Ohio Law Abs. 548, 551, 27 O.O. 336, 337, 52 N.E. 2d 675, 676, construing former G.C. 1465-69.

R.C. 4123.32 provides in part:

"(B) * * * the premium security deposit collected from any employer entitles the employer to the benefit of Chapter 4123. of the Revised Code * * *[.]"

R.C. 4123.75 gives to any employee whose employer has failed to comply with R.C. 4123.75 (*i.e.,* failure to make premium payments) the right to apply for and receive an award from the state fund. Hence, further evidence of payment of premium is the test of compliance. *State, ex rel. Herbert,* v. *Saunders, supra,* at 418, 39 Ohio Law Abs. at 552, 27 O.O. at 338, 52 N.E. 2d at 677.

R.C. 4123.37 provides that if the Industrial Commission makes a finding of noncompliance (of premium payment), the employer is entitled to written notice of such finding, and to a period of twenty days within which to furnish the appropriate payroll report and to pay the applicable premium. The procedure gives the employer the opportunity to object to the assessment and to participate in a hearing before the Industrial Commission.

Misrepresentation of the payroll amount is dealt with under R.C. 4123.25:

"No employer shall misrepresent to the industrial commission the amount of payroll upon which the premium under sections 4123.01 to 4123.94, inclusive, of the Revised Code, is based. Whoever violates this section shall be liable to the state in ten times the amount of the difference in premium paid and the amount the employer should have paid. * * *"

The remedy for misrepresentation is payment of the additional payment plus penalty.

Construing the above-mentioned statutes, it is clear that the law creates the obligation to comply upon the employer by payment of premiums and once the premium is paid the employer derives the benefit of the law (immunity from negligence actions brought by employees). Thus, even if the employer fails to comply the employee is still protected by the fund. *State, ex rel. Herbert,* v. *Saunders, supra,* at 419, 39 Ohio Law Abs. at 553, 27 O.O. at 338, 52 N.E. 2d at 677. See, also, R.C. 4123.75.

Here, the evidence is undisputed that S.S. Steel paid semiannual premiums for which it had received a certificate of premium payment. Furthermore, the Industrial Commission's representative testified that in the eyes of the commission, S.S. Steel was a complying employer.

While plaintiff and Delta Brands point to reporting inaccuracies in the payroll reports to support their assertion that S.S. Steel was not a complying employer, the failure to include an injured (or deceased) employee on a payroll report is not an omission which will deprive an employer of immunity. In *Smith* v. *Port Clinton Mfg. Co.* (July 18, 1986), Ottawa App. No. OT-85-34, unreported, the appellate court considered this very issue and approved the reasoning of the trial court:

" ' Taking first the issue of defendant's noncompliance with R.C. 4123.74, the Court finds that the key word in R.C. 4123.74 is "comply." * * * This is * * * a case where for some reason defendant failed to list all employees and pay its premiums on a payroll figure which should have in-

cluded plaintiff's pay, but had otherwise filed as it should.

" 'Under Sections R.C. 4123.24, 4123.25 and 4123.26 are provided penalty provisions for improper payments or payrolls. There is nothing in these sections which would indicate the legislative intent of making an employer who failed to list one employee or compute his premium on a payroll figure correct to the dollar a noncomplying employer under R.C. 4123.74. Rather, it is obvious that these sections contain the penalty provisions for the employer who has been incorrect for whatever reason in paying the proper amounts.' "

In the same vein, it was stated as follows in *Brown* v. *L.A. Wells Constr. Co.* (1943), 45 Ohio Law Abs. 300, 304, affirmed (1944), 143 Ohio St. 580, 28 O.O. 486, 56 N.E. 2d 451:

"It was developed at the trial and on the hearing of the motion for a new trial that the defendant had paid promiums [*sic*] to the Industrial Commission of Ohio on the wages of all of its employes [*sic*] engaged in land operations. It did not pay premiums on the wages of decedent because his wages were all earned on navigable waters outside the jurisdiction of the State.

"Even if the defendant had been mistaken in its belief that it was not required to pay premiums to the Industrial Commission on the wages of the decedent, the record discloses that the defendant had obtained coverage which extended beyond December 29, 1938, by an application to the Industrial Commission and by the payment of an advance premium. The failure of the defendant to report and pay premiums on the wages of an individual employee was a matter of accounting and adjustment between the Industrial Commission and the employer. Defendant's employees injured while acting within the course of their employment and subject to the Workmen's Compensation Laws of Ohio were fully protected by the application for coverage and the payment of an advance premium and an error in accounting could not be the basis of an action. *Hall* v. *Industrial Commission,* 131 Oh St. 416; *State, ex rel Latta,* v. *White et al.,* 140 Oh St. 197; *Kiefer* v. *Industrial Commission,* 58 Oh App. 365."

We conclude that once the Industrial Commission has certified that the employer has paid its premium, the employer is a complying employer as a matter of law. The court correctly granted S.S. Steel's motion for a judgment notwithstanding the verdict.

This assignment of error is overruled.

The remaining cross-assignment of error is as follows:

"II. The trial court erred in rendering a judgment notwithstanding the verdict in favor of S.S. Steel."

We must next determine whether Delta Brands is entitled to contribution from S.S. Steel.

R.C. 4123.74 reads in pertinent part:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, whether or not such injury, occupa-

tional disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

This section of the Ohio workers' compensation law provides that an employer who complies with the law is relieved from liability to anyone for damages arising from an injury to an employee sustained in the course of the employee's employment. As was pointed out in the syllabus to *Williams* v. *Ashland Chemical Co.* (1976), 52 Ohio App. 2d 81, 6 O.O. 3d 56, 368 N.E. 2d 304:

"An employer who has complied with the workmen's compensation laws of Ohio is relieved of any *liability* arising from the claim of a *third person* who has responded in damages to an employee, of such employer, for injuries received in the course of his employment, absent an express agreement providing otherwise." (Emphasis added.)

See, also, *Bevis* v. *Armco Steel Corp.* (1951), 156 Ohio St. 295, 46 O.O. 172, 102 N.E. 2d 444; *Daniels* v. *MacGregor Co.* (1965), 2 Ohio St. 2d 89, 31 O.O. 2d 141, 206 N.E. 2d 554; *Bankers Indemn. Ins. Co.* v. *Cleveland Hardware & Forging Co.* (1945), 77 Ohio App. 121, 43 Ohio Law Abs. 205, 32 O.O. 395, 62 N.E. 2d 180, appeal dismissed (1945), 145 Ohio St. 615, 31 O.O. 226, 62 N.E. 2d 251; and *Couch* v. *Thomas* (1985), 26 Ohio App. 3d 55, 26 OBR 228, 497 N.E. 2d 1372.

Accordingly, we hold that Delta Brands is not entitled to contribution from S.S. Steel.

The cross-assignment of error is overruled and the judgment is affirmed.

*Judgment affirmed.*

KRUPANSKY and CORRIGAN, JJ., concur.