**BROWN, ADMR. Plaintiff-Appellee v. L. A. WELLS CON-STRUCTION CO., Defendant-Appellant.**

**BROWN, ADMR. Plaintiff-Appellant, v L. A. WELLS CON-STRUCTION CO., Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

Nos. 19121 & 19282. Decided June 14, 1943.

Harrison & Marshman, Cleveland, for plaintiff.
Squire, Sanders & Dempsey, Cleveland, and Davis & Young, Cleveland, for defendant.

## OPINION

By MORGAN, P. J.

In this case two appeals have been filed; one appeal, No. 19121 by the defendant; the second appeal by plaintiff in case No. 19282. These two appeals were heard and will be considered together.

The plaintiff as the administratrix of the estate of her

father brought an action for the benefit of the next of kin to recover damages for the wrongful death of the decedent. The case was tried on plaintiff's third amended petition consisting of two causes of action. The plaintiff recovered a verdict in a substantial amount on the second cause of action from which judgment the defendant has appealed in case No. 19121. The trial judge directed a verdict for the defendant on the first cause of action from which judgment the plaintiff has appealed in case No. 19282.

On December 29, 1938, decedent was employed as an engineer on defendant's scow "Wellston" which was then being used by defendant in deepening the navigation channel in Lake Erie, near Put-in-Bay, Ohio, pursuant to a contract with the United States Government. On the morning of that day the "Wellston" was tied to a dock at Put-in-Bay. To protect the scow from ice conditions a timber float had been placed between the scow and the dock. In order to permit employees to reach the scow, defendant had lashed one of its ladders to the dock so that the ladder rested on the float and leaned against the end of the dock. Another ladder rested on the float and leaned against the side of the scow. The only means of access to the scow from the dock was to climb down the first ladder from the dock, cross the float and climb up the second ladder to the scow. There were no accomodations on the scow for the crew so the members of the crew left the scow for shore after each day's work and returned to the scow each morning.

On the morning of December 29, 1938, the decedent while returning to work started down the ladder leading from the dock to the float and almost immediately fell and pitched through the ice and was killed. The evidence was to the effect that the rungs of the ladder were covered with sleet and the ladder rested against the dock in a slanting position.

The first cause of action of plaintiff's third amended petition was based on the Jones Act, Title 46, Sec 688 of the United States Code on the theory that decedent at the time he met his death was a seaman and a member of the crew of the "Wellston" and was at the time acting in the course of his employment.

The second cause of action alleged that "if the decedent was not an employee, acting in the course of his employment * * * the decedent was an invitee and was entitled to all of the rights and protection provided to him as an invitee and frequenter of said premises" and that the accident was caused by the negligence of the defendant and its violation of stat-

utory provisions enacted for the protection of invitees and frequenters.

The defendant filed its answer which, as to the first cause of action, denied that the Jones Act was applicable to this case and as to the second cause of action, among other defenses, alleged that if it should be found that "the decedent was in the course of his employment while so proceeding to his work" then his employment and the injury sustained by decedent came within the purview of the Workmen's Compensation statutes of Ohio with which the defendant had complied.

To this answer the plaintiff filed a reply in which she denied that "the injuries or death of decedent were covered by or came within the purview of the Workmen's Compensation statutes of Ohio" and alleged that the defendant had applied to the Industrial Commission of Ohio for compensation and that the Commission had found that the matter was not within its jurisdiction.

The reply continued, "that by virtue of said application, proceeding and final order, it is res adjudicata that said injuries and death were sustained by the decedent under such circumstances as would not give rise to a claim for workmen's compensation." At no time in the course of the trial did plaintiff change her position or ask for leave to amend her second cause of action or reply.

At the close of the trial, the court ruled as a matter of law that the Jones Act was not applicable to the case, and granted defendant's motion to direct a verdict for defendant on the first cause of action. The case was submitted to the jury on the second cause of action and as stated, a substantial verdict was rendered for plaintiff.

Three errors are assigned by defendant appellant. The first two errors are based upon an error in the charge of the court to the jury and the third assignment of error is that "the judgment of the common pleas court * * *is contrary to law."

The court charged the jury that "the decedent sustained the accident that resulted in his death, while in the course of and arising out of his employment;" that under the statutes of Ohio relating to workmen's compensation, the defendant was a non-complying employer as a matter of law and that in an action against it for damages as in this case, the defendant was deprived as a non-complying employer, of the usual common law defenses of contributory negligence, assumption of risk and the fellow-servant rule. The defendant contends that by this charge the court committed prejudicial error.

The claim that the defendant in this case was a non-

complying employer was injected into the case by the trial judge. Plaintiff made no such claim either in the pleadings or in the course of the trial.

That the above charge is quite inconsistent with the allegations of plaintiff's second cause of action is obvious. The second cause of action alleges that "if decedent was not an employee acting in the course of his employment then the decedent was an invitee * * *." The plaintiff in her reply expressly denied that the death of decedent was covered by or came within the purview of the workmen's compensation statutes and asserted that the defendant was estopped by previous proceedings before the Industrial Commission of Ohio from making any such claim.

It was developed at the trial and on the hearing of the motion for a new trial that the defendant had paid promiums to the Industrial Commission of Ohio on the wages of all of its employes engaged in land operations. It did not pay premiums on the wages of decedent because his wages were all earned on navigable waters outside the jurisdiction of the State.

Even if the defendant had been mistaken in its belief that it was not required to pay premiums to the Industrial Commission on the wages of the decedent, the record discloses that the defendant had obtained coverage which extended beyond December 29, 1938, by an application to the Industrial Commission and by the payment of an advance premium. The failure of the defendant to report and pay premiums on the wages of an individual employee was a matter of accounting and adjustment between the Industrial Commission and the employer. Defendant's employees injured while acting within the course of their employment and subject to the Workmen's Compensation Laws of Ohio were fully protected by the application for coverage and the payment of an advance premium and an error in accounting could not be the basis of an action. Hall v Industrial Commission, 131 Oh St 416; State, ex rel Latta, v White et al, 140 Oh St 197; Kiefer v Industrial Commission, 58 Oh App. 365.

A charge by the court on the theory of liability which is not alleged in the pleadings is prejudicially erroneous. 39 O Jur 952; Cincinnati Traction Company v Forrest, 73 Oh St 1; Palmer v Humiston, 87 Oh St 401; Insurance Company et al v B. & O. Railroad Company, 129 Oh St 401.

It is also our opinion that final judgment for the defendant should be rendered on the second cause of action because the undisputed evidence discloses that the decedent at the time he met his death was not an invitee but was

defendant's employee acting within the scope of his employment.

The ladder from which decedent fell afforded the sole means of access to the place of employment. From the time that an employee stepped on the ladder until he reached the scow, he was using the equipment supplied by the employer for the purpose of boarding the vessel and reaching the place where his work was actually to be performed. The decedent was on the premises of the employer at the time of the injury and it is our opinion that under the evidence in this case the defendent had then attained the status of an employee.

See also: **Industrial Commission v Barber, 117 O. S. 373.**

The administrator therefore cannot now recover on a cause of action charging that at the time of the accident his status was that of an invitee or frequenter.

The trial judge also came to the conclusion that at the time of the accident the decedent was an employee acting within the scope of his employment and so charged the jury. This court differs from the trial judge in the conclusion to be drawn from the fact of employment. It seems clear to us that there can be no recovery under a cause of action alleging that decedent was not an employee but was an invitee at the time of the accident on the theory that the defendant was a non-complying employer.

We now come to the consideration of plaintiff's appeal in case No. 19282 from the action of the trial court in directing a verdict and entering a judgment for the defendent on the first cause of action.

The Bill of Exceptions discloses that the court directed a verdict for the defendant on the first cause of action after all the evidence was in. This was on September 23, 1942 but nothing appeared on the transcript as of that date and no entry to that effect was made in the journal. On March 12, 1943, for the first time, the action of the trial court in directing a verdict for the defendant upon the first cause of action appears in the transcript and in the court's journal. The final paragraph of this journal entry is as follows:

"And it appearing to the court that said order was announced by this court on the 23rd day of September, 1942, at the time of and during the trial of said cause, but that the same, through inadvertence, was not entered at said time upon the records or the Journal of the Court, the court orders that this order and judgment be now entered by the clerk of this court upon the journal of this court this 12th day of March,

1943, said order and judgment to take effect as of the 23rd day of September, 1942."

From this judgment the plaintiff filed her notice of appeal to this court on March 27, 1943.

Afterwards the defendant filed its motion to dismiss this appeal on the ground that it was not filed in time, defendant's claim being that the twenty days for filing an appeal begins to run from September 23, 1942 and not March 12, 1943.

If the action of the common pleas court in directing a verdict on the first cause of action had been entered on the journal of the court on September 23, 1942, when made, and later on March 12, 1943 a nunc pro tunc order had been entered on the court's journal correcting the original journal entry to make it speak the truth, the time for filing an appeal would run from September 23, 1942 and would not be extended by the nunc pro tunc entry of March 12, 1943. **Perfection Stove Company v Shere, 120 Oh St 445.**

In this case, however, the plaintiff had no right of appeal prior to March 12, 1943 because prior to that date there was no journal entry from which an appeal could be taken. It seems to us, therefore, that an appeal filed within twenty days of March 12, 1943, as this appeal was filed, is filed in time.

The defendant has called our attention to the case of Landon v Reid, 10 Ohio Rep. 202, decided 1840, which seems to hold the contrary. The case was not as clearly reported as it might have been but if it holds what the defendant claims then it is our opinion that the case has been virtually overruled by the case of **State ex rel etc v Day, 136 Oh St 477.**

The question involved in that case was whether the time for appeal ran from an oral decision by the court or from the time that the judgment was placed upon the journal. The Supreme Court held that the time for appeal began to run when the judgment was placed on the journal and said in part:

"The entire difficulty here encountered is due to the failure to remember and observe one of the most important fundamentals of the law, namely, that a court of record speaks through its journal. This principle has been consistently and repeatedly followed by this court."

We find that this question has arisen in other jurisdictions in this country. In Barnes v Barnes, 196 N. E. 917 (Mass.) a case was duly heard but the plaintiff died after an

.order was made in the case but before it was journalized. Later the court made the administrator of plaintiff's estate a party and entered on its journal its decree nunc pro tunc as of the day of the order.

The fifth paragraph of the syllabus reads:

"The right of the administrator of the estate of deceased plaintiff to appeal, held to run from the time of actual entry of final decree, although the decree was entered nunc pro tunc as of the date preceding plaintiff's death and time for appeal computed from date as of which decree was entered had expired."

Also, Arnd v Postle, 203 N. W. 260 (199 Iowa 931) 6th paragraph of syllabus:

"Usually nunc pro tunc orders for judgment when made relate back and make judgment of validity from date when it should have been entered but in determining commencement of time for appeal date when judgment is spread on the record is date from which such time is calculated."

See also: Simon v El Paso & S. W. Co. (N.B.) 160 Pac. 352; Reynolds v Hamilton et al (Tenn.) 77 S. W. 2nd, 986.

We now proceed to consider the second appeal, No. 19282 on its merits. The Jones Act was enacted in 1920 and inter alia provides:

"Any seaman who shall suffer personal injuries in the course of his employment, may, at his election, maintain an action for damages at law with a right of trial by jury, and in such action the statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railroad employes shall apply."

This case was tried in September, 1942. Previously there had been Federal decisions to the effect that the Jones Act was passed to protect seamen only when employed on navigable waters. On February 1, 1943 the Supreme Court of the United States, in the case of O'Donnell v Great Lakes Dredge & Dock Company, 63 Supreme Court Rep. 488, decided that a seaman is covered by the Jones Act whether his injuries are sustained on navigable waters or while he is on land.

The first sentence of the opinion is as follows

"The question for decision is whether a seaman injured on shore while in the service of his vessel is entitled to recov-

er for his injuries in a suit brought against his employer under the Jones Act."

This question was answered in the affirmative.

Defendant contends that any right of plaintiff to recover in this case must be based on the Longshoremen's Act enacted in 1927, U. S. C. Title 33, Sec. 903. The Longshoremen's Act, however, specifically exempts from its provisions "a master or members of a crew of any vessel."

The question for our decision is whether there was in the case evidence for the jury that the decedent at the time of the accident was a seaman or a "member of the crew" of the Wellston.

In Bolan v Bay State Dredge & Contracting Company, 48 Fed. Suppl. 266, it was held that a dock hand employed on a dredge scow, engaged in work almost identical to that in which the Wellston was engaged at Put-in-Bay, was a seaman and a member of the crew within the meaning of the Federal Fair Labor Standards Act.

There was offered and introduced in evidence in this case as an admission against interest, the affidavit of Wells, the President of the defendant corporation, in the proceeding before the Industrial Commission of Ohio. In this affidavit Mr. Wells stated:

"I am respectfully declining to certify to the death claim of Peter Ranftl, (the decedent) for the reason that he was employed with our firm as an engineer and a member of the crew operating the drill boat Wellston, working on navigable waters only, and was so engaged on the date of his alleged accident and death."

A reading of the above affidavit in the light of the recent decision of the Supreme Court of the United States in 63 Sup. Ct. Rep. 488 shows that there was abundant evidence for the jury that the Jones Act was applicable in this case and therefore the trial court erred in directing a verdict for the defendant on the first cause of action.

For the reasons stated the judgment in plaintiff's appeal No. 19282 is reversed and the cause is remanded for further proceedings according to law. Final judgment is rendered for the defendant in defendant's appeal No. 19121.

SKEEL, J., & LIEGHLEY, J., concur.