BRIDGES ET AL., APPELLEES AND CROSS-APPELLANTS, *v.* NATIONAL
ENGINEERING AND CONTRACTING CO., APPELLANT AND CROSS-APPELLEE.

[Cite as Bridges *v.* Natl. Engineering & Contracting Co. (1990),
49 Ohio St. 3d 108.]

(No. 88-1992 — Submitted December 12, 1989 — Decided February 28, 1990.)

110

*Hollingsworth & Sunderland* and *David M. Kothman,* for appellees and cross-appellants.

*Holbrook & Poston* and *Kent W. Seifried,* for appellant and cross-appellee.

HOLMES, J. This case presents two issues for our determination. First, we are asked to determine whether Kentucky law, which would bar the claim,[2] or Ohio law applies to appellees' intentional tort claims against National. We need not reach the merits of this choice-of-law query, however, because even if Ohio law applies, appellees' complaint fails to set forth an intentional tort claim sufficient to survive National's Civ. R. 12(B)(6) pleading, pursuant to the standards set forth in *Van Fossen, supra,* and *Mitchell* v. *Lawson Milk Co.* (1988), 40 Ohio St. 3d 190, 532 N.E. 2d 753.

---

[2] See Ky. Rev. Stat. Section 342.690(1); *Zurich Ins. Co.* v. *Mitchell* (Ky. 1986), 712 S.W. 2d 340, 341, and Ky. Rev. Stat. Section 342.610(4); *McCray* v. *Davis H. Elliot Co.* (Ky. 1967), 419 S.W. 2d 542; *Fryman* v. *Electric Steam Radiator Corp.* (Ky. 1955), 277 S.W. 2d 25.

Second, we must determine whether National is a "noncomplying employer" for purposes of Ohio's workers' compensation law, and is thus not entitled to immunity from appellees' wrongful death and personal injury claims provided in R.C. Chapter 4123. For the reasons set forth in Part II of this opinion, we hold that National was a complying employer for purposes of Ohio's workers' compensation law for the period at issue here, and was thus entitled to all the benefits of R.C. Chapter 4123.

I

Appellees' causes of action arose on June 27, 1986, over one month prior to the effective date of R.C. 4121.80(G)(1). Thus, the sufficiency of appellees' claims of an intentional tort committed by their employer, pursuant to Civ. R. 12(B)(6), must be measured against the common-law standard of "intent" as set forth in *Van Fossen, supra,* at paragraph five of the syllabus.

Appellees argue, however, that appellant did not raise its Civ. R. 12(B)(6) claim in the courts below, and is thus precluded from challenging the sufficiency of the complaint for the first time in this court. We do not agree. Civ. R. 12(B) requires the defense of failure to state a claim for which relief can be granted to be asserted either in the responsive pleading or, at the option of the pleader, by motion. Here, National raised its Civ. R. 12(B)(6) defense in the first paragraph of its answer, which preserved on the record its continuing objection to the sufficiency of the complaint.

The fact that the lower courts ruled on an alternate defense on summary judgment does not divest this reviewing court of jurisdiction. This is so by virtue of Civ. R. 12(H)(2) and our long-standing rule of appellate practice with respect to the sufficiency of a complaint: "To warrant a recovery on the petition, it must show a cause of action *in the plaintiff.* If the petition fails to show such a cause of action, the objection is not waived by a failure to demur, or to make the objection by answer." (Emphasis *sic.*) *Buckingham* v. *Buckingham* (1880), 36 Ohio St. 68, 78, quoted with approval in *Bd. of Edn. of Hopewell Twp.* v. *Guy* (1901), 64 Ohio St. 434, 445, 60 N.E. 573, 575; and *Bozzelli* v. *Indus. Comm.* (1930), 122 Ohio St. 201, 208-209, 171 N.E. 108, 110. See, also, 5 American Jurisprudence 2d (1962) 59-60, Appeal and Error, Section 592. Appellant preserved its Civ. R. 12(B)(6) defense in its answer, and in its second proposition of law to this court, which defense is within our cognizance to resolve.

"A claim of intentional tort against an employer will be dismissed as failing to establish that the pleader is entitled to relief unless the complaint alleges facts showing that the employer: (1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded." *Mitchell, supra,* at syllabus.

Appellees' claims against National for an intentional tort are set forth in claims nine through thirteen of their amended complaint, comprising paragraphs forty through fifty-two. The operative allegation, found at paragraph forty-one, is as follows:

"Defendant National Engineering and Contracting Company knew, believed or should have known that harm to its employees and workers, and specifically to Decedent Stewart Bridges and Plaintiff William E. Lattarulo, was substantially certain to occur as a result of washing construction barrels on Interstate 71 at or near the

Brent Spence Bridge, yet ordered the Decedent and Plaintiff William E. Lattarulo to-perform said work in an extremely dangerous environment as a part of the duties of their employment. Such actions of Defendant National Engineering were wanton, willful and with utter disregard for the safety and security of Decedent Bridges and Plaintiff Lattarulo."

In addition, paragraphs nine through thirteen provide factual background to the automobile accident which caused appellees' injuries, and contain allegations similar to those in paragraph forty-one. No other factual allegations relevant to the intentional tort claims are provided in the complaint.

Construing, as we must, all the factual allegations in the complaint as true, and making all reasonable inferences in favor of appellees, *Mitchell, supra*, at 192, 532 N.E. 2d at 756, it is beyond doubt that appellees can prove no set of facts warranting a recovery in intentional tort. Here, as in *Mitchell*, appellees provide only unsupported conclusions that National committed an intentional tort. Bridges and Lattarulo were directed by National to work in a *closed* portion of the bridge approach. Although any construction work conducted adjacent to a lane of moving traffic could be characterized as a "dangerous environment," it cannot be concluded, without more, that National knew that injury to an employee was thereby certain or even substantially certain to result. Otherwise, employers engaged in highway construction or repair would be precluded from allowing any traffic to pass on lanes adjacent to lanes under repair. Even fewer facts indicating the requisite intent are pleaded here than were pleaded in *Mitchell, supra*, wherein we stated:

"* * * Virtually every injury in the workplace can be made the basis for a claim of intentional tort if the unsupported conclusion that the employer intended to injure the employee is allowed to prevail over factual allegations which preclude the possibility of intentional tort. We do not serve the interest of employees, employers or the administration of justice in the already over-docketed courts of Ohio if we permit claims to go forward which, on the face of the pleading, have no chance of success." (Footnote omitted.) *Mitchell, supra*, at 193, 532 N.E. 2d at 756.

We reverse the court of appeals' judgment on the intentional tort claims, as appellees' factual allegations and unsupported conclusions are not sufficient to withstand appellant's Civ. R. 12(B)(6) defense.

## II

The court of appeals upheld the trial court's dismissal of appellees' claims against National for personal injury and wrongful death, holding that National was not a "noncomplying employer" subject to civil actions by its employees under R.C. 4123.77 because it was not an "employer" as defined by R.C. 4123.01(B)(2). We affirm the dismissal of these claims, albeit upon different grounds.

R.C. 4123.01(B) defines "employer" to include:

"* * *

"(2) Every person, firm, and private corporation, including any public service corporation, that (a) has in service one or more workmen or operatives regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, or (b) is bound by any such contract of hire or by any other written contract, to pay into the insurance fund the premiums provided by Chapter 4123. of the Revised Code.

"All such employers are subject to Chapter 4123. of the Revised Code. * * *"

National was clearly an "employer" as defined by this section. The court of appeals erroneously held it to be "beyond dispute" that subdivision (a) of this section "only applies to contracts for work to be performed in Ohio," and not to the instant contract, which called for work to be performed primarily in Kentucky. We cannot agree, finding no language which limits the definition of an "employer" to one who has employees "under any contract of hire" for work to be performed *only* within Ohio.

As stated in *Prendergast* v. *Indus. Comm.* (1940), 136 Ohio St. 535, 539, 27 N.E. 2d 235, 237, construing similar Sections G.C. 1465-45, 1465-96 and 1465-99, the statutes "refer to 'employer of the state' in such way that they must be deemed to apply to any employer doing business in Ohio who hires employees to work either in Ohio or elsewhere." *Prendergast* dealt with an Ohio employer who hired a salesman, whose work took him outside the state and who was, in fact, injured in Indiana. In holding that the salesman was entitled to Ohio workers' compensation benefits, the court relied on *Hall* v. *Indus. Comm.* (1936), 131 Ohio St. 416, 3 N.E. 2d 367, where a bus porter, hired by an Ohio employer and injured while the bus was operating in the state of Michigan, was likewise held to be entitled to Ohio benefits. The *Prendergast* court set forth the rule that "an employee injured *outside* the state may recover under the Ohio act if the employing industry and his relationship thereto are localized in Ohio." (Emphasis added.) *Id.* at 543, 27 N.E. 2d at 239.

The court was careful to distinguish its decision in *Indus. Comm.* v. *Gardinio* (1929), 119 Ohio St. 539, 164 N.E. 758, where an Ohio employer hired an employee in Ohio to do work *solely* in Pennsylvania. The employer had fully complied with the Pennsylvania workers' compensation law, and the employee received compensation from Pennsylvania for his injuries suffered in that state. Because no part of the employee's duties were to be performed in Ohio, the employee was not covered by the Ohio State Insurance Fund. *Gardinio, supra*, at syllabus.

This line of cases disposes of the dispute before us today, as here we deal with an Ohio employer who hired employees to perform at least some of their work in Ohio, and the employees suffered injury within Ohio. Under such circumstances, the Ohio employer is clearly an "employer" within the meaning of R.C. 4123.01(B)(2)(a).

Appellant strenuously argues that the injured workers' relationship to National was "localized" in Kentucky, not Ohio, due to the significant contractual ties to Kentucky. Even if reasonable minds were to differ on this issue, the argument overlooks the alternative definitional language of subdivision (b) of R.C. 4123.01(B)(2). National was, by the unambiguous language of paragraph thirty-two of its collective bargaining agreement with appellees' union, bound "to carry Ohio State Workmen's Compensation *and* Kentucky Workmen's Compensation for the three counties covered herein for the protection of the employees." (Emphasis added.)

This agreement does not, as concluded by the court of appeals, set forth that National will provide Kentucky coverage for its "Kentucky employees" only, and Ohio coverage for its "Ohio employees" only. Even if this were a proper construction of the agreement, Bridges and Lattarulo were indisputably working *in Ohio* at

the time of their accident. In his affidavit before the trial court, appellee Lattarulo estimated that he worked in Ohio on approximately sixty-five percent of the days he worked on the project, and that National had employees working within Ohio on the Bridge Project in some capacity at least eighty to eighty-five percent of the time. Moreover, Bridges and Lattarulo worked in *both* states, and thus neither can be said to be either an "Ohio employee" or a "Kentucky employee" exclusively. National employed at least one worker in Ohio under a contract of hire for this Bridge Project, and was bound by its contract of hire to pay into the Ohio workers' compensation State Insurance Fund the premiums required by R.C. Chapter 4123, and was thus an "employer" as defined in R.C. 4123.01(B)(2), subject to R.C. Chapter 4123.

The next question appellees raise in their cross-appeal is whether National failed to comply with R.C. Chapter 4123, thus sacrificing the immunity from civil liability provided in R.C. 4123.74. Although the court of appeals did not rule on this question, we find it unnecessary to remand to that court for a determination thereof, as the record before us demonstrates sufficient compliance by National to preserve its immunity.

R.C. 4123.35, now 4123.35(A), provided, in pertinent part:

"Except as provided in this section, every employer mentioned in division (B)(2) of section 4123.01 of the Revised Code, and every publicly owned utility shall semiannually in the months of January and July pay into the state insurance fund the amount of premium fixed by the industrial commission for the employment or occupation of such employer, the amount of which premium to be so paid by each such employer to be determined by the classifications, rules, and rates made and published by said commission. Such employer shall semiannually pay such further sum of money into the state insurance fund as may be ascertained to be due from him by applying the rules of said commission, and a receipt or certificate certifying that such payment has been made shall immediately be mailed to such employer by the commission, *which receipt or certificate, attested by the seal of said commission, is prima-facie evidence of the payment of such premium.*" (Emphasis added.)

All employers subject to the workers' compensation laws are required to keep complete payroll records and maintain them for at least five years. R.C. 4123.24; Ohio Adm. Code 4121-7-17(A). They must report their actual wage expenditures and remit the premium owed to the Treasurer of State. Ohio Adm. Code 4121-7-14(A) and (B), and Ohio Adm. Code 4121-9-07. Once the renewal premium is paid, the commission mails a certificate of premium payment to the employer. Ohio Adm. Code 4121-9-07(E). Here, the record reveals that National was issued certificates of premium payment for the periods from January 1, 1986 through August 31, 1986, and from July 1, 1986 through February 28, 1987. Pursuant to R.C. 4123.35(A), such certificates are prima facie evidence of the payment of premiums.

At the time of appellees' accident R.C. 4123.74 provided, in pertinent part:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any

death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund * * *." H.B. No. 1132 (128 Ohio Laws 1334).

Appellees argue, however, that certificates of premium payment are only prima facie evidence that the proper premium has been paid, and thus evidence showing an employer under-reported its payroll, as they allege National did here,[3] proves noncompliance for purposes of R.C. 4123.77.[4]

While the accuracy of a premium payment by an employer is certainly dependent upon the accurate reporting of payroll by such employer, an employer who fails to fully pay its premiums does not *automatically* become a noncomplying employer subject to a common-law action by its employees. Indeed, once an employer has filed a payroll report, whether complete or not, and paid the premium thereon, a finding of noncompliance is a question of fact to be determined in the first instance by the Industrial Commission, not by a court in an original civil action.

R.C. 4123.32(B) requires the commission to adopt "[a] rule providing that the premium security deposit collected from any employer entitles the employer to the benefits of Chapter 4123. of the Revised Code, for the remainder of the six months and also for an additional adjustment period of two months, and thereafter, if the employer pays the premium due at the close of any six-month period, coverage shall be extended for an additional eight-month period beginning from the end of the six-month period for which the employer pays the premium due[.]" The rule required by this statute is Ohio Adm. Code 4121-7-16(D).

It is the employer's duty to report all of its payroll subject to R.C. Chapter 4123. Where the commission relies on the payroll report as being accurate, and issues the certificate of premium payment, the employer is presumptively entitled to all the benefits of the Act.

As between the employer and the commission, however, the certificate is *not* conclusive. All the payroll records of the employer are subject to inspection and audit by the commission, R.C. 4123.24 and Ohio Adm. Code 4121-7-17(B), and the commission has "the right to make adjustments as to classifications, allocation of wage expenditures to classifications, amount of wage expenditures, premium rates and/or amount of premium." Ohio Adm. Code 4121-7-17(C). Such adjustments may be made at any time. Ohio Adm. Code 4121-7-28.

---

[3] An investigator for the Ohio Bureau of Workers' Compensation stated in an affidavit filed in the trial court that, during the investigation of Bridges' widow's death claim, he spoke with National's safety and loss control director by telephone. During the conversation, the safety director admitted that National had not paid a premium to the Ohio State Insurance Fund on any of Bridges' wages, but rather had covered Bridges under Kentucky's workers' compensation laws.

[4] R.C. 4123.77 provides, in pertinent part:

"Employers mentioned in division (B)(2) of section 4123.01 of the Revised Code, who fail to comply with section 4123.35 of the Revised Code are not entitled to the benefits of sections 4123.01 to 4123.94, inclusive, of the Revised Code, during the period of such noncompliance * * *."

See, also, Ohio Adm. Code 4121-14-01.

Moreover, the determination of an employer's failure to comply with R.C. Chapter 4123 is an administrative determination. Whenever the *commission* finds that an "amenable employer"[5] has failed to comply, it must notify the employer in writing and give the employer twenty days to come into compliance. R.C. 4123.37 and Ohio Adm. Code 4121-14-02(A). The employer may object to the reassessment and request a hearing thereon. R.C. 4123.37 and Ohio Adm. Code 4121-14-02(E). Otherwise, if the employer fails to pay the premium due within twenty days, the employer is determined to be a noncomplying employer, subject to various administrative, civil and criminal sanctions, R.C. 4123.25, 4123.26, 4123.75, and 4123.79, and the assessment — as well as any claims by employees for compensation against the noncomplying employer — becomes a lien against the assets of the employer. R.C. 4123.76 and 4123.78; Ohio Adm. Code 4121-14-02(C) and 4121-14-04(A).[6]

Finally, we agree with the holding of several lower courts that, standing alone, the failure of an employer who has otherwise complied to include one or more employees on a payroll report "is not an omission which will deprive an employer of immunity." *Perry* v. *S.S. Steel Processing Corp.* (1987), 40 Ohio App. 3d 198, 200, 532 N.E. 2d 783, 785. See, also, *Smith* v. *Port Clinton Mfg. Co.* (July 18, 1986), Ottawa App. No. OT-85-34, unreported; *Brown* v. *L.A. Wells Constr. Co.* (1943), 45 Ohio Law Abs. 300, 67 N.E. 2d 110, affirmed (1944), 143 Ohio St. 580, 28 O.O. 486, 56 N.E. 2d 451.

In the instant case, National's omission of its Bridge Project employees from its payroll reports was a matter between it and the commission, and involved circumstances which were not precisely covered by a commission rule. Ohio Adm. Code 4121-7-23 is not directly on point, as it deals with out-of-state employers and with Ohio employers hiring employees *within Ohio.*[7] It does not deal with the

---

[5] " '[A]menable employer' means an employer subject to division (B)(2) of section 4123.01 of the Revised Code." R.C. 4123.37.

[6] That it is the commission's role, in the first instance, to determine noncompliance is manifested by R.C. 4123.27, which provides that payroll records submitted to the commission are for its own official use, "and shall not be open to the public nor be used in any court in any action or proceeding pending therein unless the commission is a party to such action or proceeding * * *."

[7] Ohio Adm. Code 4121-7-23 provides:
"(A) The entire remuneration of employees, whose contracts of hire have been consummated within the borders of Ohio, whose employment involves activities both within and without the borders of Ohio and the supervising office of the employer

is located in Ohio, shall be included in the payroll report.
"(B) The remuneration of employees of other than Ohio employers, who have entered into a contract of employment outside of Ohio to perform transitory services in interstate commerce only, both within and outside of the boundaries of Ohio, shall not be included in the payroll report.
"(C) The Industrial Commission of Ohio respects the extra-territorial right of the Workmen's Compensation Insurance Coverage of an out-of-state employer for his regular employees, whose contracts of hire have been consummated in some State other than Ohio, while performing work in the State of Ohio for a temporary period not to exceed ninety (90) days. Employees whose contracts of hire are consummated at a job site in Ohio or employees who have been hired to work specifically in Ohio must be protected for Workmen's Compensation Insurance under the Ohio Fund.

situation alleged by National, *i.e.*, an Ohio employer hiring employees *outside* Ohio to do work both within and outside Ohio. Thus, whether National had a duty to report such employees' payroll is a matter to be decided, in the first instance, by the commission.

For purposes of this and any other civil action, we hold that once the Industrial Commission has certified that an employer has established industrial coverage and paid its premium, the employer is a complying employer as a matter of law. Such employer's failure to have included a particular injured employee in a required payroll report does not deprive the employer of its statutory immunity from a civil action brought by the employee, in the absence of a final determination by the commission that the employer is a non-complying employer who has not

settled its liability to the State Insurance Fund.

We thus affirm the trial court's dismissal of appellees' claims against National arising from personal injury and wrongful death, as National was a complying employer entitled to the immunity provided in R.C. 4123.74. Having reversed the court of appeals' decision with respect to appellees' claims for intentional tort against National, we hereby reinstate in total the judgment of the trial court, dismissing all claims against National.

*Judgment affirmed in part and reversed in part.*

MOYER, C.J., WRIGHT and H. BROWN, JJ., concur.

SWEENEY, DOUGLAS and RESNICK, JJ., dissent.

---

"(D) Where there is possibility of conflict with respect to the application of the workmen's compensation law because the contract of employment is entered into and all or some portion of the work is or is to be performed in different states, the employer and his employees may mutually agree to be bound by the workmen's compensation law of the State of Ohio by executing Form C-110, or mutually agree to be bound by the workmen's compensation law of some other state by executing Form C-112, such forms to be obtained from and filed with the Industrial Commission of Ohio and Bureau of Workmen's Compensation within ten days after execution."