DECISION AND JOURNAL ENTRY
Appellant, Guy Allan Malroit, was convicted, following a jury trial in the Medina County Court of Common Pleas, of felonious sexual penetration, in violation of R.C. 2907.12 and two counts of kidnapping, in violation of R.C. 2905.01(A)(2), (4) and 2905.01(B)(2). On November 18, 1999, the court adjudicated Malroit a sexual predator and sentenced him to 1) life in prison for the felonious sexual penetration and 2) eight to twenty-five years for the two counts of kidnapping[1]. The sentences were consecutive. Malroit appeals both his conviction and his adjudication as a sexual predator. We overrule all seven of Malroit's assignments of error and affirm the judgment of the trial court
 I.
On December 31, 1998, the Medina County Grand Jury indicted Malroit for felonious sexual penetration, two counts of kidnapping and gross sexual imposition, in violation of R.C. 2907.05. The events that gave rise to the indictment occurred in 1995.[2]
In 1995, Malroit lived in Michigan. In anticipation of moving to Ohio he spent the weekends in Ohio looking for work. While in Ohio he visited with Dale Smith ("Dale") and his family. Dale and Malroit served together in the Navy and were close friends. Malroit was familiar with the entire Smith family including Dale's wife, Kathy, and their four children Crystal, Bryan, Angel and Sarah.[3]
On August 11, 1995, Malroit baby-sat for the Smith children. The next day, Bryan told his mother that Malroit had "check[ed] to see if [Bryan] could have babies." Bryan said that Malroit asked to see Bryan's homework and took Bryan up to his bedroom. Once in the bedroom, Malroit locked the door, told Bryan to remove his clothes, tied Bryan's hands behind his back and blindfolded him. Bryan described Malroit put something "soft and squishy" in his mouth and something "in his butt and it hurt."
After contacting the police, the Smiths' took Bryan to the Children's Hospital Medical Center for an examination. There was no physical evidence of sexual abuse however the doctor did indicate a finding of laxity in the muscle tone around Bryan's anus. Within a week, Sandra May ("May") an intake investigator from the Medina County Department of Human Services, met and interviewed Bryan at the family's home. Upon May's recommendation Bryan began treatment with Dr. Michael Petrasek ("Dr. Petrasek"), a psychologist.
Malroit pleaded not guilty and the case went to trial on October 12, 1999. The jury found Malroit guilty of felonious sexual penetration and two counts of kidnapping and not guilty of gross sexual imposition. On November 18, 1999, the court adjudicated Malroit a sexual predator and sentenced Malroit. Malroit filed a timely appeal with this court.
 II.
Assignment of Error No. 1:
 THE COURT DENIED APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY REFUSING TO ORDER A PSYCHOLOGICAL EXAMINATION OF THE ALLEGED VICTIM.
Assignment of Error No. 2:
 THE COURT DENIED APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY REFUSING TO ORDER DISCOVERY OF THE ALLEGED VICTIM'S MEDICAL RECORDS, PSYCHOLOGICAL RECORDS, AND STATEMENTS TO INVESTIGATORS, COUNSELORS, DOCTORS AND PSYCHOLOGISTS.
Malroit's first two assignments of error deal with discovery issues and will be discussed together. Malroit argues in his first assignment of error that the nature of this case, with no physical findings and only the victim's accusations, required a psychological examination of Bryan. In his second assignment of error, Malroit argues that the trial court's denial of additional discovery into Bryan's medical and psychological records and statements made to doctors, psychologists, counselors and investigators resulted in an unfair trial. We disagree.
Rule 16 of the Ohio Rules of Criminal Procedure specifically provides that certain types of discovery shall be ordered and that certain other types of discovery shall not occur. It neither provides for, nor prohibits, psychological examinations of alleged victims of sex offenses.
A trial court's inherent authority includes discretion to order discovery not specifically authorized or prohibited by Rule 16 of the Ohio Rules of Criminal Procedure in order to insure fundamental fairness. State v. Stutts (January 2, 1991), Lorain App. No. 90CA004879, unreported, at 5-6. Before a trial court may exercise that discretion, however, the party seeking discovery must present some evidence "justifying a departure from standard practice unless such a need is readily apparent." Id. at 6, citing United States v. Richter
(C.A. 9, 1973), 488 F.2d 170, 175; United States v. Germain (S.D.Ohio 1975), 411 F. Supp. 719, 725. When a defendant seeks discovery beyond that specifically provided for by Rule 16, he must demonstrate that the evidence sought "is potentially exculpatory and cannot be obtained by other reasonable means." Stutts, Lorain App. No. 90CA004879, unreported, at 6-7. Moreover, "a request to subject an alleged sex abuse victim to a psychological examination seeks an extraordinary order from the court and should not be granted lightly." Id.
The trial court has broad discretion in determining whether to grant or deny various motions for discovery, and such determination must not be disturbed on appeal absent an abuse of discretion. State v. Shoop
(1993), 87 Ohio App.3d 462, 469. The term "an abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. Berk v. Matthews
(1990), 53 Ohio St.3d 161, 169.
The record in the present case indicates that Bryan testified directly as to the sexual conduct at issue. Although Malroit did not have an independent examination of the victim, the defense had ample opportunity to cross-examine Bryan's psychologist, Dr. Petrasek, on his evaluation of Bryan and whether sexual conduct had occurred. Nothing in the record indicates the trial court abused its discretion in deciding to overrule Malroit's motion for an independent psychological examination of Bryan.
Malroit asserted the basis for discovery into medical and psychological records and statements made to doctors, psychologists, counselors and investigators was to examine the interviewing protocol used with Bryan. Malroit was free to cross-examine the medical doctor, social worker, psychologist and chief police investigator as to the protocol each used with Bryan.
Malroit failed to demonstrate that either a psychological examination of Bryan, or medical and psychological records and statements made to doctors, psychologists, counselors and investigators would produce potentially exculpatory evidence that could not be obtained by other reasonable means. Accordingly, it was not within the trial court's discretion to order the defense requests for discovery beyond the scope of what the State was required to provide under Crim. R. 16.
Malroit's first and second assignments of error are overruled.
 III.
Assignment of Error No. 3:
 APPELLANT'S CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND A FAIR TRIAL WERE DENIED BY THE COURT'S UNREASONABLE RESTRICTIONS UPON THE TESTIMONY OF APPELLANT'S EXPERT PSYCHOLOGIST.
Malroit argues that the trial court restricted the testimony of his expert witness, Dr. Terrence Campbell ("Dr. Campbell"). Malroit asserts that the trial court did not allow Dr. Campbell to testify about: experiments regarding interviewer bias, research demonstrating the dangers of unaided recall, personal experiences with interviewing protocol for a suspected sexually abused child and the possibility of a false positive diagnosis of sexual abuse.
The admission or exclusion of evidence is within the broad discretion of the trial court. State v. Allen (1995), 73 Ohio St.3d 626, 633. The trial court's ruling will not be reversed on appeal absent a clear abuse of discretion that materially prejudices the defendant. State v. Kniep
(1993), 87 Ohio App.3d 681, 685, citing State v. Hymore (1967),9 Ohio St.2d 122, 128. As previously noted the term "an abuse of discretion" connotes more than an error of law or judgment, it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore, 5 Ohio St.3d at 219.
In the present case, Dr. Campbell attempted to testify about a particular psychological experiment titled the Chester experiment. In Ohio there is no learned treatise exception to the hearsay rule. Evid.R. 803; see, also, Fed.R.Evid. 803(18). Thus, learned treatises may not be admitted into evidence and a witness may not quote from the treatise or make reference to its title during direct examination. Evid.R. 702 and 706; see, also, Piotrowski v. Corey Hosp. (1961),172 Ohio St. 61, syllabus. "In Ohio, a learned treatise may be used for impeachment purposes to demonstrate that an expert witness is either unaware of the text or unfamiliar with its contents." Stinson v.England (1994), 69 Ohio St.3d 451, paragraph two of the syllabus. Moreover, the substance of the treatise may only be used to impeach the credibility of an expert witness who has relied upon the treatise or has acknowledged its authoritative nature. Id. In the present case the Chester experiment evidence was not being used to impeach Dr. Campbell.
Beyond the hearsay problem, learned treatises are inadmissible because the opinions or conclusions contained therein are unverifiable, the technical language may not be understood by most jurors, the opinions or conclusions would be admitted into evidence without an oath of truthfulness, and the opposing party would be unable to cross-examine the person who gave the opinion or conclusion.
Evid.R. 703 states "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by him or admitted in evidence at the hearing." Ohio Evid.R. 703 differs from the federal rule in that the Ohio rule does not recognize a third basis for expert opinion: information supplied to the expert outside the record, if of the type reasonably relied upon by experts in the particular field. Fed.R.Evid. 703.
In this case, on direct examination, Malroit's expert attempted to refer to specific medical treatises or articles regarding the Chester experiment which dealt with interview protocol. Reference to this type of material on direct examination is not proper under Ohio law. Evid.R.703 and 702. Accordingly, we find the trial court did not abuse its discretion in sustaining the State's objections to Dr. Campbell's testimony.
The trial court also sustained several of the State's objections to Dr. Campbell's testimony on the grounds the testimony was irrelevant or unresponsive to the question. One objection was to Dr. Campbell's explanation of the dangers associated with "unaided recall" meaning the attempt to recall an interview without the aid of a video or audiotape. He provided examples from his own practice of interviewing suspected sexually abused children. The record reflects that none of Bryan's interviews were recorded. However, there were no facts in evidence to suggest that the various people who interviewed Bryan were unable to recall the interviews. In response to another question, Dr. Campbell described the proper interview protocol. The trial court sustained the State's objection stating "[t]he examples you are giving have nothing to do with this particular case."
Dr. Petrasek, Bryan's psychologist, had testified that he diagnosed Bryan with an adjustment disorder. Dr. Campbell attempted to testify about other possible causes for adjustment disorders. The court sustained an objection to this testimony on the basis that Dr. Campbell's testimony did not relate to the facts of the case. While it is possible that situations other than sexual abuse can lead to an adjustment disorder, there were no facts in evidence to suggest another possible source for Bryan's adjustment disorder. Therefore, Dr. Campbell's testimony regarding other possible sources of adjustment disorder was not relevant to the case.
This court has thoroughly reviewed the record. Under the facts and circumstances of this case, this court does not find that the trial court abused its discretion in sustaining the State's objections. The third assignment of error is overruled.
 IV.
Assignment of Error No. 4:
 THE TRIAL COURT'S DECISION TO ALLOW THE PROSECUTION'S PSYCHOLOGIST TO TESTIFY TO THE CREDIBILITY OF THE ALLEGED CHILD VICTIM DENIED APPELLANT HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL.
Malroit argues in his fourth assignment of error that the prosecution's expert testified as to the credibility of the child victim in violation of State v. Boston (1989), 49 Ohio St.3d 108, syllabus. We disagree.
The Supreme Court of Ohio has held that "the use of expert testimony in child abuse cases is proper." Boston (1989), 46 Ohio St.3d at 120, modified on other grounds by State v. Dever (1992), 64 Ohio St.3d 401, paragraph one of the syllabus. The determination as to the admissibility of expert testimony is within the trial court's discretion and will not be reversed absent an abuse of discretion. Miller v. Bike Athletic Co.
(1998), 80 Ohio St.3d 607, 616.
In Boston the Supreme Court held "[a]n expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant."Boston, 46 Ohio St.3d at syllabus; see, also, State v. Stowers (1998),81 Ohio St.3d 260, 262-263. However, Boston does allow testimony 1) that is additional support for the truth of the facts that are testified to by the alleged child victim or 2) that assists the fact finder in assessing the child's veracity. Stowers, 81 Ohio St.3d at 263.
In the case sub judice, Malroit argues that Dr. Petrasek was permitted to testify about Bryan's credibility. Dr. Petrasek testified that he had met with Bryan 4 or 5 times in 1995 and again in 1999, in preparation of the case coming to trial. Malroit refers to the following portion of Dr. Petrasek's testimony, beginning with the State's question:
 Dr. Petrasek, based on your education, training and experience, your counseling sessions with Bryan Smith, your work with children of alleged sexual abuse, do you have an opinion, within a reasonable psychological certainty as to whether or not Bryan Smith was sexually abused?
Defense counsel objected to the question. The court overruled the objection citing Stowers and the fact that Dr. Petrasek had previously "described behaviors of [the] child that were consistent with sexual abuse." We find this was a proper question.
After Dr. Petrasek answered that he did have an opinion the State asked "what is your opinion?" Dr. Petrasek answered:
 I am aware there may be facts, evidence, knowledge, details that I simply don't have about the situation that would be presented to the Court and to the jury, but I would say it is my opinion that what this child said to me was presented in a credible way.
Though it went somewhat beyond the question, the answer was not objected to. Based on Malroit's failure to object and bring the issue to the trial court's attention for consideration, we must address Dr. Petrasek's response under the plain error doctrine. See State v. Slagle
(1992), 65 Ohio St.3d 597, 604-605; Crim.R. 52. In order to prevail under a plain error analysis, Malroit bears the burden of demonstrating the outcome of the trial clearly would have been different but for the error. State v. Cooperrider (1983), 4 Ohio St.3d 226, 227, citing Statev. Long (1978), 53 Ohio St.2d 91, 97. The plain error rule "is to be applied with utmost caution and invoked only under exceptional circumstances, in order to prevent a manifest miscarriage of justice."Cooperrider, 4 Ohio St.3d at 227.
Dr. Petrasek observed Bryan's behavior during their sessions. He testified that Bryan would squirm for three to ten minutes every time the topic of Bryan's butt came up in conversation. During one session while discussing the blindfolding, Bryan "put his hand behind his back to show me, and tried to get an apparent blindfold off of his face." Dr. Petrasek characterized the squirming and blindfold display as a spontaneous showing of Bryan's distress. Bryan described the incident with language that matched the development level of a seven-year-old. Dr. Petrasek also noted that Bryan's description seemed personal.
We find Dr. Petrasek's testimony was not based on his belief in Bryan's statements but rather conclusions drawn from his observations of Bryan's behavior. See Stowers, 81 Ohio St.3d at 263. There was no plain error in admitting Dr. Petrasek's testimony. The fourth assignment of error is overruled.
 V.
Assignment of Error No. 5:
 APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY THE COURT'S DECISION ALLOWING THE EMERGENCY ROOM PHYSICIAN TO TESTIFY TO THE PERCENTAGE OF CHILD SEX ABUSE VICTIMS THAT PRESENT NO PHYSICAL FINDINGS OF ABUSE EVEN THOUGH THE ALLEGED PERPETRATOR CONFESSED.
Malroit argues that the trial court improperly allowed Dr. Christopher Kennedy ("Dr. Kennedy") to testify that in fifty percent of sexual abuse cases where the perpetrator admits to sexually abusing the child, there are no physical findings.
The trial court has discretion to admit or exclude testimony, including expert testimony. Allen, 73 Ohio St.3d at 633. This court should not reverse unless we find an abuse of discretion. Kniep,87 Ohio App.3d at 685. The State argues it complied with Evid.R. 703, governing expert witnesses, when it offered this evidence.
Evid.R. 702 provides a witness may testify as an expert if his testimony relates to matters beyond the knowledge and experience possessed by lay persons, he is qualified as an expert by virtue of his knowledge, skill, experience, training, or education, and his testimony is based on reliable scientific specialized information. Evid.R. 703 permits an expert to testify regarding an opinion or inference if it is based on facts or data perceived by him or admitted into evidence.
Dr. Kennedy testified he was a physician at the Department of Emergency Medicine at Akron Children's Hospital, where they see approximately 1,200 to 1,500 cases of sexual and physical abuse a year. He also testified that he was the director of the sub-specialty fellowship making him responsible for the Akron Children's Hospital fellows' education including their training on sexual and physical abuse. Dr. Kennedy has investigated allegations of abuse and neglect and has testified as an expert on medical treatment and diagnosis of abused children. Dr. Kennedy testified he examined Bryan the evening he was brought into the Children's Hospital Medical Center. The emergency room documents were admitted into evidence.
The doctor testified that in his personal experience in greater than fifty percent of sexual abuse cases there is an absence of physical findings where the perpetrator has admitted abuse. The testimony was reference to Dr. Kennedy's own personal experience and not in reference to a learned treatise or article.
We have reviewed the record, and we conclude that the evidence was relevant and the trial court did not abuse its discretion in admitting Dr. Kennedy's testimony. Accordingly, the fifth assignment of error is overruled.
 VI.
Assignment of Error No. 6:
 THE COURT IMPROPERLY AND UNLAWFULLY SENTENCED APPELLANT TO CONSECUTIVE TERMS FOR FELONIOUS SEXUAL PENETRATION AND KIDNAPPING IN VIOLATION OF THE MULTIPLE COUNTS PROVISIONS OF [R.C.] 2941.25.
In his sixth assignment of error, Malroit asserts that the trial court erred when it found that felonious sexual penetration and kidnapping were not allied offenses of similar import. We disagree.
The Double Jeopardy Clause of the United States Constitution protects criminal defendants from multiple punishments for the same offense.State v. Rance (1999), 85 Ohio St.3d 632, 634. The General Assembly reinforced the principles and concepts contained in the Double Jeopardy Clause through R.C. 2941.25. R.C. 2941.25 provides:
 (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
 (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.
In applying R.C. 2941.25, the Ohio Supreme Court has given the following guidelines for analyzing the crimes to determine if they constitute allied offenses:
 If the elements of the crimes "correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import." * * * If the elements do not so correspond, the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted.
(Citations omitted.) Rance, 85 Ohio St.3d at 636.
Pursuant to the requirements of the analysis, the elements of the crimes must be compared to determine the interrelation and similarity of the offenses. Id. The determination of whether two offenses are of similar import is limited to an objective analysis of the statutory provisions at issue to determine whether the elements of the charged offenses "correspond to such a degree that the commission of one crime will result in the commission of the other[.]" State v. Blankenship
(1988), 38 Ohio St.3d 116, 117. The elements should be compared in the abstract rather than in the context of the particular case in order to produce "clear legal lines capable of application in particular cases."Rance, 85 Ohio St.3d at 636.
If the elements of the statutes do not correspond to this degree, "the offenses are of dissimilar import and the court's inquiry ends — the multiple convictions are permitted." Rance, 85 Ohio St.3d at 636. If the trial court determines that two offenses are allied offenses of similar import, it must proceed to examine the facts of the case and the defendant's conduct to determine whether the crimes were committed separately or with a separate animus. Blankenship,38 Ohio St.3d at 117. If offenses of similar import are committed separately or with a separate animus, a defendant may be punished for both. Rance,85 Ohio St.3d at 636; R.C. 2941.25(B).
Malroit was convicted of both kidnapping and felonious sexual penetration. We begin our analysis with a review of the elements of each offense. At the time of the offense, sexual felonious penetration was governed by R.C. 2907.12(A) which states:
 [n]o person, without privilege to do so, shall insert any part of the body or any instrument, apparatus, or other object into the vaginal or anal cavity of another who is not the spouse of the offender * * * when any of the following applies:
 * * * (b) The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.
Malroit was convicted of two counts of kidnapping. The first count was pursuant to R.C. 2905.01(A)(2) or (4), which states:
 (A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where he is found or restrain him of his liberty, for any of the following purposes:
 * * * (2) To facilitate the commission of any felony or flight thereafter;
 * * * (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against his will[.]
The second count of kidnapping was pursuant to R.C. 2905.01(B)(2), which states:
 (B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances which create a substantial risk of serious physical harm to the victim:
* * * (2) Restrain another of his liberty [.]
Upon abstract review of the statutory elements of the two offenses, it is clear that the commission of one does not necessarily result in the commission of the other. Each contains at least one element that the other does not. Felonious sexual penetration contains the element of inserting any part of the body instrument, apparatus, or other object into the vaginal or anal cavity of another. Kidnapping contains the elements of substantial risk of serious physical harm and restraint of another's liberty.
Having compared the statutory elements of felonious sexual penetration and kidnapping in the abstract, as directed by Rance and having determined that those elements do not "correspond to such a degree that the commission of one crime will result in the commission of the other,"Rance, 85 Ohio St.3d at 638, we conclude that felonious sexual penetration and kidnapping are not allied offenses of similar import. Accordingly, Malroit may be convicted of both, and the separate sentence for each offense does not violate R.C. 2941.25. The sixth assignment of error is overruled.
 VII.
Assignment of Error No. 7:
 THE COURT IMPROPERLY AND UNLAWFULLY FOUND THE DEFENDANT-APPELLANT TO BE A SEXUAL PREDATOR.
Malroit argues that the court failed to state any basis for its classification of Malroit as a sexual predator. He asserts that only one statutory factor, Bryan's young age, was applicable in his case. Malroit also argues "the court in this case failed to utter any basis for [Malroit's] sexual predator classification * * * there is little evidence to suggest the judicial application of any standards."
In determining whether the evidence was sufficient to support his adjudication as a sexual predator, this court must review the evidence before the trial court. We must determine whether the evidence before the trial court was clear and convincing enough that a reasonable fact finder could have a "firm belief" that Malroit was a sexual predator, as defined by R.C. 2950.01(E). Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus; R.C. 2950.09(B)(3). See, also, State v.Cartwright (Nov. 25, 1998), Lorain App. No. 97CA006782, unreported, at 6.
We begin by noting that the record does reflect the judicial application of statutory factors. At the hearing the trial judge stated "[t]aking into account the factors listed in the Revised Code, the Court finds that it is clearly convinced that the State has established by clear and convincing evidence that Mr. Malroit should be classified as a sexual predator." The November 18, 1999, judgment entry of the sentencing and sexual predator determination states:
 Prior to the sentencing hearing the court conducted a hearing on the issue of whether Defendant is a sexual predator. The Court heard and considered the testimony of Suzanne Lesure, Ph.D. The Court considered the evidence introduced at the trial of the within case. Upon consideration of the evidence and arguments of counsel, the Court finds that the State has proved by clear and convincing evidence the Defendant is a sexual predator, taking into account the factors set forth in R.C. 2950.09(B)(2)(a) through [B](2)(j). The Court finds the Defendant is a sexual predator pursuant to R.C. 2950.09(B).
In deciding whether the individual was one who "is likely to engage in the future in one or more sexually oriented offenses," R.C. 2950.01(E), the trial court is to consider the factors listed in R.C. 2950.09(B)(2). In this case, the following factors are relevant:
(a) The offender's age;
* * *
 (c) The age of the victim of the of the sexually oriented offense for which sentence [was] imposed;
* * *
 (h) The nature of the offender's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
* * *
 (j) Any additional behavioral characteristics that contribute to the offender's conduct.
Dr. Suzanne Lesure ("Dr. Lesure") testified that the following factors increased Malroit's likelihood to re-offend: an adult male committed the offense against a male child, the use of force, non-familial perpetration and denial of the offense. She also testified that several factors would reduce the risk including: first offense, single victim, absence of drug or alcohol use to impair the victim and no previous conviction for a sexual offense.
Dr. Lesure's testimony corresponds to the factors identified in R.C.2950.09(B)(2)(a), (c), (h) and (j). On review of the evidence, we find there is sufficient clear and convincing evidence to support those findings. Based on the application of these factors to Malroit, there was sufficient evidence that, if believed, could convince a reasonable factfinder that Malroit is a sexual predator. Malroit's seventh assignment of error is overruled.
 VIII.
Having overruled all seven of Malroit's assignments of error we affirm the judgment of the trial court.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 _______________________ WILLIAM R. BAIRD
FOR THE COURT, SLABY, J., WHITMORE, J., CONCUR.
[1] The court merged the first count of kidnapping, R.C. 2905.01(B)(2) into the second count of kidnapping, R.C. 2905.01(A)(2), (4).
[2] The State suggested a paperwork error was primarily responsible for the delay in time between the alleged incident in 1995 and the indictment in 1998. Dr. Kennedy, the physician who examined Bryan in 1995, testified that he made an error on the medical record. Dr. Kennedy erroneously check marked an option that stated "HISTORY AND/OR BEHAVIORAL INDICATORS NOT CONSITENT WITH:" sexual assault.
[3] Crystal is Kathy's daughter from a previous relationship. Bryan is Dale's son from a previous marriage, however Kathy adopted Bryan. Angel and Sarah are Kathy and Dale's biological children.