[Cite as *Anderson v. WBNS-TV, Inc.*, 2024-Ohio-4880.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Aaron Anderson et al., | : | |
| Plaintiffs-Appellants/<br>Cross-Appellees, | : | No. 23AP-647<br>(C.P.C. No. 16CV-9809) |
| | : | |
| v. | | (REGULAR CALENDAR) |
| | : | |
| WBNS-TV, Inc., | : | |
| Defendant-Appellee/<br>Cross-Appellant. | : | |

D E C I S I O N

Rendered on October 8, 2024

**On brief:** *Calig Law Firm*, *LLC*, and *Sonia T. Walker*; *Colley*, *Shroyer & Abraham Co.*, *LPA*, and *David I. Shroyer*; *Jones Law Group*, *LLC*, and *Eric A. Jones*, for appellants. **Argued:** *Sonia T. Walker*.

**On brief:** *Zeiger*, *Tigges & Little LLP*, *Marion H. Little*, *Jr.*, *Christopher J. Hogan*, and *Kris Banvard*, for appellee. **Argued:** *Marion H. Little*.

APPEAL from the Franklin County Court of Common Pleas

BOGGS, J.

{¶ 1} Plaintiffs-appellants/cross-appellees, Aaron Anderson, Aaronana Anderson, and Arron Anderson ("the Andersons"), appeal the judgment of the Franklin County Court of Common Pleas, dismissing with prejudice their defamation claims against defendant-appellee/cross-appellant, WBNS-TV, Inc. ("WBNS"). WBNS cross-appeals the trial court's order concerning the division of unpaid court costs in the final judgment entry. For the following reasons, we reverse the trial court's judgment and remand this matter to the trial court for a determination of damages. Our judgment on the Andersons' appeal renders the cross-appeal moot.

No. 23AP-647

## I. FACTS AND PROCEDURAL BACKGROUND

{¶ 2} In October 2016, plaintiffs, Aaron Anderson; Aaronana Anderson; Willie Anderson, individually and as guardian of Arron Anderson; and Nanita Williams, individually and as guardian of Arron Anderson (collectively, "plaintiffs"), filed a complaint against WBNS. The complaint contained various claims, including claims for defamation, that stemmed from statements published and broadcast by WBNS concerning a robbery that occurred outside the Fort Rapids Indoor Waterpark on November 26, 2015. This appeal concerns only the plaintiffs' defamation claims.

{¶ 3} On January 20, 2016, WBNS received an email from the Columbus Division of Police containing a Media Information report and two black-and-white photographs. The report contained a summary of the robbery at the waterpark:

> The victims were walking in the parking lot of Fort Rapids waterpark watching their eight[-]year[-]old daughter ride her "hoverboard[.]" The suspects approached on foot, put a gun to the eight[-]year[-]old[']s head and demanded the hoverboard. The suspects then ran to a white PT [C]ruiser and fled out of the parking lot.

(Def.'s Trial Ex. A-1 at 5.) It stated that the suspects were "[u]nknown." *Id.* The Media Information report asked that anyone who could help identify the persons in the attached photographs, "who may have been involved," to contact the Columbus Police Robbery Unit or Central Ohio Crime Stoppers. *Id.* The first photograph attached to the report depicts multiple, unidentifiable individuals standing in a parking lot. The second, clearer photograph, apparently taken by an indoor surveillance camera and timestamped November 26, 2015, 9:25:44 p.m., depicts three individuals—two men and one woman—walking toward the camera in a hallway. The individuals in the hallway photograph were later identified as the Andersons.

{¶ 4} WBNS used the Media Information report to prepare segments that aired during its 5:00 a.m. and 6:00 a.m. broadcasts on January 21, 2016. During one broadcast, WBNS employees showed the hallway photograph of the Andersons and stated, "[C]olumbus Police hope you recognize these two men who robbed an 8-year-old girl at gunpoint!" (Pls.' Trial Ex. 5B.) The broadcast continued, "The girl was riding her hoverboard in the parking lot with her family when they say two men pointed a gun at her head, taking [the hoverboard]. Columbus Police say suspects—seen here—took off in a P-

No. 23AP-647

T [C]ruiser." *Id.* During the other broadcast, while again showing the hallway photograph, WBNS employees stated:

> An 8-year-old girl robbed at gunpoint—for a popular toy. The robbery happened in the parking lot of Fort Rapids indoor waterpark back in November. You can see the scene in these just-released surveillance images. The girl was riding her hoverboard when robbers went up to her, [p]ut a gun to her head and took [the hoverboard]. Columbus Police say suspects—seen here—took off in a P-T [C]ruiser.

(Pls.' Trial Ex. 6B.) WBNS also published the hallway photograph on its website and Facebook page with the headline, "Robbers Put Gun to Child's Head and Steal Hoverboard." (Def.'s Trial Ex. A-6.) The accompanying text stated, in part, "The suspects put a gun to the 8-year-old girl's head and demand[ed] the toy." *Id.* It continued, "the two men ran to a white PT Cruiser and took off. Investigators say there was a woman with the two male suspects. They are not sure how she is connected to the robbery." *Id.*

{¶ 5} Nanita Williams, the Andersons' mother, saw the early morning broadcast and informed the Andersons' father, Willie Anderson, after which the family went to the police station. The police questioned the family and determined that the Andersons had not been involved in the robbery. The police thereafter issued a follow-up to the Media Information report, which stated that the three people depicted in the hallway photograph had spoken to detectives, who had determined that they were not suspects. Upon receiving this statement, WBNS removed the hallway photograph from its website and replaced it with the parking-lot photograph.

{¶ 6} A defamation claim against a news organization like WBNS "requires proof that (1) the organization made a false statement, (2) the statement was defamatory, (3) the organization published the statement, (4) the plaintiff was harmed as a proximate result of the publication, and (5) the organization acted with the requisite degree of fault in publishing the statement." *Anderson v. WBNS-TV, Inc.*, 158 Ohio St.3d 307, 2019-Ohio-5196, ¶ 9 ("*Anderson II*"), citing *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, ¶ 77. Plaintiffs alleged in their complaint that WBNS published false and defamatory statements by displaying the photograph of the Andersons and identifying them in broadcasts and headlines as the robbers. (Oct. 17, 2016 Compl. at ¶ 7, 24.) They alleged that WBNS acted intentionally, with malice. *Id.* at ¶ 26. WBNS raised several affirmative defenses in its answer to plaintiffs' complaint, including that its reporting

No. 23AP-647

"involved matters of public concern," that it "did not act with actual malice," and that its "conduct is privileged and nonactionable under the common law of Ohio." (Nov. 1, 2016 Answer at ¶ 40, 43.)

{¶ 7} The procedural history of this case is lengthy, involving multiple motions for summary judgment, two prior decisions from this court, an opinion from the Supreme Court of Ohio, and ultimately a jury trial.

{¶ 8} WBNS initially moved for summary judgment in June 2017. With respect to plaintiffs' defamation claims, WBNS focused its motion solely on the fault element; it argued that plaintiffs could not establish by clear and convincing evidence that WBNS acted with negligence. WBNS did not argue that plaintiffs' recovery was dependent on proof that WBNS acted with actual malice. It instead cited *Lansdowne v. Beacon Journal Publishing Co.*, 32 Ohio St.3d 176, 180 (1987) (plurality), for the proposition that a private-figure defamation plaintiff suing a news-media defendant must meet a negligence standard, by "prov[ing] by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication." WBNS maintained that it was entitled to rely on the information provided by the Columbus Division of Police, that it had no reason to doubt the accuracy of that information, and that it accurately reported from the Media Information report that the individuals depicted in the hallway photograph were suspects in the robbery. The trial court granted WBNS's motion for summary judgment, concluding that plaintiffs failed to establish a genuine issue of material fact as to whether WBNS was negligent.

{¶ 9} Plaintiffs appealed, and this court affirmed in part and reversed in part the trial court's entry of summary judgment. The parties' appellate arguments vis-à-vis the defamation claims, like their arguments in the trial court, focused only on the fault element. After citing as applicable the *Lansdowne* negligence standard, we concluded the plaintiffs had demonstrated a genuine issue of material fact as to whether WBNS was negligent, so we reversed the trial court's judgment on the defamation claims and remanded the matter to the trial court.

{¶ 10} The Supreme Court of Ohio accepted WBNS's discretionary appeal and vacated this court's decision. It stated, "In Ohio, in a case involving a private person who was allegedly defamed in a statement about a matter of public concern, the plaintiff 'has the burden of proving both that the statement was false and [that] the defendant was at least

negligent in publishing it.' " *Anderson II* at ¶ 8, quoting *Dale v. Ohio Civ. Serv. Emps. Assn.*, 57 Ohio St.3d 112, 114 (1991), citing *Lansdowne.* The Supreme Court stated that, to prevail on their defamation claims, plaintiffs were required "to present clear and convincing evidence that WBNS acted negligently in publishing defamatory statements about" the Andersons. *Id.* at ¶ 14. *See also Oney v. Allen*, 39 Ohio St.3d 103, 106 (1988) fn. 2 (acknowledging the *Lansdowne* plurality's statement that a defamation plaintiff must prove his or her case by clear and convincing evidence). The Supreme Court held that, although this court correctly *stated* the *Lansdowne* standard, it did not *apply* it. *Id.* The Supreme Court therefore vacated our decision in *Anderson I* and remanded the matter for this court to apply the *Lansdowne* negligence standard and to again determine whether the trial court properly granted WBNS's motion for summary judgment on plaintiffs' defamation claims. *Id.*

{¶ 11} On remand, this court again reversed the trial court's entry of summary judgment on plaintiffs' defamation claims. *Anderson v. WBNS-TV, Inc.*, 10th Dist. No. 17AP-660, 2020-Ohio-6933 ("*Anderson III*"). Applying the *Lansdowne* standard, we held: "Given that WBNS'[s] reporting deviated from the information contained in the Media Information report, * * * a question of fact remains regarding whether WBNS acted reasonably to ensure the accuracy of its reporting." *Id.* at ¶ 25. We noted that WBNS's public identification of the Andersons as suspects in an armed robbery of an eight-year-old child created a question of fact as to whether the harmful potential, or defamatory character, of WBNS's statements should have been apparent to a reasonable broadcaster. *Id.* at ¶ 27. WBNS unsuccessfully moved for reconsideration of our decision in *Anderson III* and unsuccessfully sought further review from the Supreme Court of Ohio. *See Anderson v. WBNS-TV, Inc.*, 163 Ohio St.3d 1440, 2021-Ohio-1896 (appeal not accepted).

{¶ 12} Back in the trial court, plaintiffs and WBNS again filed motions for summary judgment. The trial court granted plaintiffs' motion in part, only as to the element of publication, which the court characterized as undisputed, and denied WBNS's motion for summary judgment. (Oct. 21, 2022 Decision & Entry Granting Pls.' Mot. for Summ. Jgmt.; Aug. 11, 2023 Am. Case Schedule & Journal Entry Following Pretrial Conference at 2.)

{¶ 13} In its final pretrial statement, WBNS addressed each element of plaintiffs' defamation claims. As to the fault element, it stated, "Plaintiffs fail to identify a disputed issue of material fact on the issue of WBNS'[s] fault, or negligence, necessary to sustain

No. 23AP-647

their claim." (Sept. 27, 2022 Def. WBNS-TV, Inc.'s Final Pretrial Statement at 4.) WBNS neither mentioned an unresolved issue regarding privilege nor suggested that plaintiffs must prove actual malice to recover.[1]

{¶ 14} A visiting judge conducted a jury trial on plaintiffs' defamation claims.[2] The trial court sua sponte brought up the question of qualified privilege during trial. During a discussion with counsel about potential jury interrogatories, the judge asked WBNS's counsel, "[D]id you plead qualified privilege? * * * Is there a qualified privilege issue? Because that requires actual malice to get over a qualified privilege." (Tr. at 7.) He initially posited:

> [T]he public nature of this controversy - - because it's generated by the police department, it has to do with a felony crime, you got a child, you got all the rest of these bad things - - could make this something that you had a - - that the station had a qualified privilege to broadcast on; in which case even if mistakes happen, that plaintiffs have to prove actual malice to get over the qualified privilege.

*Id.* at 8. WBNS's counsel initially responded, "I don't remember all the items we've pled," *id.* at 7, but subsequently told the court, "we did plead privilege," *id.* at 12. The trial judge responded:

> [I]t all comes down, I think, to whether this was a matter of public interest, and I'm inclined to think it was; and, therefore, even if [WBNS] defamed [plaintiffs,] they got to prove actual malice to get over the privilege is the way I'm reading [the Ohio Jury Instructions] and the way I'm reading the cases.

*Id.* The trial judge stated to plaintiffs' counsel, "I think they got - - probably got a qualified privilege as a matter of law. It's not a fact question for the jury, and that just makes it all the more important that you prove actual malice; otherwise, you lose." *Id.* at 14-15.

{¶ 15} Two days later, the trial judge stated, "I'm convinced as a matter of law that I've got to charge on conditional privilege." (Tr. at 32.) He stated, "[T]his is all a matter of public importance, public interest that's a conditionally privileged subject area. We then

---

[1] The only mention of actual malice in WBNS's pretrial statement is related to damages. WBNS noted that in a private-party defamation case involving a matter of public concern, "damages are never 'presumed' unless a plaintiff proves actual malice on the fault element, and Plaintiffs will be unable to present any evidence of actual malice." (Def. WBNS-TV, Inc.'s Final Pretrial Statement at 4.)

[2] On appeal, plaintiffs have submitted only fragments of the trial transcript, primarily consisting of discussions between counsel and the judge regarding jury instructions and jury interrogatories.

tell [the jury] what actual malice means for that. If the jury finds no actual malice, the case is over." *Id*. In a similar vein, while discussing jury instructions, the trial judge rejected plaintiffs' attorney's suggestion that this is a negligence case, stating, "It can't be * * * if it's a matter of public interest." *Id*. at 102.

{¶ 16} The trial court submitted to the jury a series of interrogatories that asked, as to each of the Andersons: (1) whether that plaintiff proved by a preponderance of the evidence that WBNS issued a false publication or publications about that plaintiff; (2) whether that plaintiff proved by clear and convincing evidence that WBNS negligently issued a false publication or publications about that plaintiff; and (3) whether that plaintiff proved by clear and convincing evidence that WBNS acted with actual malice, as defined in the jury instructions, in issuing a false publication or publications about that plaintiff. Over plaintiffs' objections, both the jury instructions and the jury interrogatories precluded the jury from considering damages unless it first concluded that WBNS acted with actual malice.

{¶ 17} The jury unanimously found that WBNS issued a false publication or publications about each of the Andersons and that WBNS acted with negligence in doing so. But the jury also unanimously found that WBNS did *not* act with actual malice in issuing a false publication or publications about each of the Andersons. Therefore, the jury did not consider the question of damages, but instead returned unanimous verdicts for WBNS. The trial court entered final judgment for WBNS based on the jury's verdicts. Finding that plaintiffs had prevailed on some issues, however, the trial court ordered that unpaid court costs be paid 50 percent by WBNS and 50 percent by plaintiffs.

## II. ASSIGNMENTS OF ERROR AND ISSUES FOR REVIEW

{¶ 18} Despite this lengthy procedural history, the issues before this court are limited. The Andersons present three assignments of error:

> [1.] The Trial Court Erred When It Applied The Defense of Qualified Privilege After WBNS Waived The Defense.
>
> [2.] The Trial Court Erred, Based On [An] Incorrect Application Of The Qualified Privilege Defense, In Requiring A Finding Of Actual Malice Rather Than Negligence To Recover Actual Damages.

> [3.] The Trial Court Abused Its Discretion In Failing To Submit A Separate Interrogatory To The Jury On Reckless Disregard.

{¶ 19} The thrust of the Andersons' appeal is that the trial court erred by applying the qualified privilege and requiring them to prove that WBNS acted with actual malice. Unchallenged are the jury's conclusions that WBNS negligently made a false statement or statements about each of the Andersons and the trial court's determinations that WBNS published those statements, which were defamatory. Also unchallenged is the jury's determination that WBNS did not act with actual malice. The only remaining question is whether WBNS's statements were subject to a qualified privilege, such that the Andersons were required to prove that WBNS acted with actual malice to recover. If the answer to that question is yes, we must affirm the trial court's judgment. But if, as the Andersons argue, the qualified privilege does *not* apply, the Andersons would have been entitled to recover upon proof that WBNS acted with negligence—a determination the jury made. In that case, the Andersons would be entitled to a determination of their damages.

{¶ 20} WBNS has filed a cross-appeal concerning the trial court's allocation of unpaid court costs, asserting as its sole assignment of error that the trial court abused its discretion and misapplied applicable law when it ordered unpaid court costs split between plaintiffs and WBNS.

## III. ANALYSIS

### A. First Assignment of Error

{¶ 21} In their first assignment of error, the Andersons argue that WBNS waived the defense of qualified privilege by neither raising it in its answer nor raising it in its motions for summary judgment. We disagree.

{¶ 22} Qualified privilege is an affirmative defense to a defamation claim, and the defendant must plead it separately from a general denial. *Cooper v. Grace Baptist Church, Inc.*, 81 Ohio App.3d 728, 734 (10th Dist.1992), citing *Douglas Elec. Corp. v. Grace*, 70 Ohio App.3d 7, 12 (2d Dist.1990). Failure to raise an affirmative defense in a responsive pleading or amended pleading constitutes a waiver of the defense. *Id*. at 734-35.

{¶ 23} The Andersons admit that WBNS "cursorily" raised the defense of qualified privilege in its answer. (Appellants' Brief at 21.) In considering whether WBNS sufficiently raised the defense of qualified privilege, we remain mindful that Ohio is a notice-pleading

No. 23AP-647

state.  *See Maternal Grandmother, ADMR v. Hamilton Cty. Dept. of Job & Family Servs.*, 167 Ohio St.3d 390, 2021-Ohio-4096, ¶ 10, citing *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, ¶ 13.  Except as required under Civ.R. 9(B), a party need not plead a claim with particularity; "a short and plain statement of the claim" will typically suffice.  Civ.R. 8(A).  A defendant's answer is subject to the same notice-pleadings standards as a plaintiff's complaint, and a defendant adequately pleads an affirmative defense if the answer gives the plaintiff fair notice of the defense.  *New Lexington City School Dist. Bd. of Edn. v. Muzo Invest. Group., L.L.C.*, 5th Dist. No. 15-CA-00012, 2016-Ohio-1338, ¶ 33; *see also Ed Stinn Chevrolet v. Natl. City Bank*, 28 Ohio St.3d 221, 226 (1986) fn. 2 ("Under the liberal notice pleading system adopted in this state, appellant's pleadings were sufficient to place Stinn on notice of appellant's defenses.").  By pleading in its answer that it "did not act with actual malice" and that its "conduct is privileged and nonactionable under the common law of Ohio," we conclude that WBNS sufficiently put the Andersons on notice that it was claiming qualified privilege and therefore preserved that affirmative defense.  (Nov. 1, 2016 Answer at ¶ 40, 43.)

{¶ 24} The Andersons argue, however, that WBNS nevertheless forfeited the defense by not raising it in their motions for summary judgment.  In support of that argument, they direct this court to *Morrison v. Gugle*, 142 Ohio App.3d 244 (10th Dist.2001), in which we cite Civ.R. 8(C) for the proposition that a defendant's failure to raise an affirmative defense "in a responsive pleading or motion constitutes waiver."  *Id*. at 258.  Civ.R. 8(C) requires a defendant to plead affirmative defenses in a responsive pleading, but Civ.R 12(B) sets out certain affirmative defenses that "may at the option of the pleader be made by motion" before filing a responsive pleading.  Waiver occurs if a defendant fails to raise an affirmative defense in a responsive pleading or in a motion pursuant to Civ.R. 12(B).  *Morrison* provides no support for the Andersons' position that a defendant who has preserved an affirmative defense in a responsive pleading must also include that defense as an argument in a subsequent motion for summary judgment.  Indeed, a majority of the Supreme Court of Ohio recently agreed that " 'a defense pleaded in an answer is not waived for trial merely because it was not [also] raised on summary judgment.' "  *State ex rel. Awms Water Solutions v. Mertz*, 162 Ohio St.3d 400,  2020-Ohio-5482, fn. 2.  *See also Bridges v. Natl. Eng. & Contracting Co.*, 49 Ohio St.3d 108, 111 (1990) (defendant's assertion of failure to state a claim upon which relief can be granted in its answer "preserved on the record its

No. 23AP-647

continuing objection to the sufficiency of the complaint," despite the trial court ruling solely on an alternate defense on summary judgment).

{¶ 25} Because WBNS sufficiently asserted privilege as an affirmative defense in its answer, it did not later waive that defense by not moving for summary judgment on that basis. Accordingly, we overrule the Andersons' first assignment of error.

## B. Second Assignment of Error

{¶ 26} In their second assignment of error, the Andersons argue that the trial court erred by applying a qualified privilege to WBNS's statements, thereby requiring the Andersons to prove that WBNS acted with actual malice to recover for defamation. The Andersons maintain that the privilege does not apply to false and defamatory statements created by WBNS and not drawn from the information supplied to it by the police.

{¶ 27} Contrary to WBNS's argument, the Andersons' argument about applicability of the qualified privilege in this case does not fail because of the Andersons' decision to file only portions of the trial transcript. The trial court decided as a matter of law that a qualified privilege applied to WBNS's defamatory statements about the Andersons, because the statements concerned a matter of public interest, and the Andersons have provided those portions of the transcript in which counsel and the judge discussed whether the qualified privilege was applicable. Although the trial court mentioned the testimony of plaintiffs' media expert, Mr. Fisher, "about how *Crime Stoppers* types of media release are used around the country," in discussing his conclusion that the qualified privilege applied, there is no indication that the contents of that testimony affected the judge's legal determination. (Tr. at 32.) This court has before it the Media Information report prepared by the Columbus Division of Police and transcripts or copies of the broadcasts and publications WBNS made based on that report, as well as affidavits describing the uncontroverted occasion and circumstances upon which WBNS made its reports. The absence of a transcript of witness testimony does not, in this case, inhibit this court's de novo review of the trial court's determination as a matter of law that WBNS was entitled to a qualified privilege.

{¶ 28} The focus under the Andersons' second assignment of error is not on the falsity of WBNS's statements, which the jury has already determined, but on the accuracy of WBNS's reporting of the information it received from the Columbus Division of Police. As an example of how WBNS's broadcasts and publications included defamatory

No. 23AP-647

statements that were not taken from the information in the Media Information report, the Andersons point to WBNS's statement that "these two men"—the Andersons, as shown in the hallway photograph—"robbed an 8-year-old girl at gunpoint," when the Media Information report did not say that the men shown in the photograph were the robbers. (Gravely Aff., Ex. 3.) Similarly, WBNS stated, while showing the hallway photograph, "Columbus Police say suspects - - seen here - - took off in a P-T cruiser," when the Media Information report did not say that the men in the photograph were the suspects who fled in a PT Cruiser. *Id.* WBNS also published the hallway photograph of the Andersons on its website and Facebook page with the headline, "Robbers Put Gun to Child's Head and Steal Hoverboard," again despite the absence of any indication in the Media Information report that the people shown in the photograph were the "robbers." (June 20, 2017 Memo Contra of the Pls. to Def.'s Mot. for Summ. Jgmt., Ex. 1.) The Andersons maintain that the qualified privilege does not apply, because the defamatory statements were created by WBNS and were not accurate reports of the information contained in the Media Information report.

### 1. Defamation

{¶ 29} "Defamation, which includes both libel and slander, is a false publication that causes injury to a person's reputation, either exposing the person to public hatred, contempt, ridicule, shame or disgrace, or affecting the person adversely in his or her trade of business." *Miller v. Cent. Ohio Crime Stoppers, Inc.*, 10th Dist. No. 07AP-669, 2008-Ohio-1280, ¶ 10, citing *Roe v. Heap*, 10th Dist. No. 03AP-586, 2004-Ohio-2504, ¶ 18, citing *Sweitzer v. Outlet Communications, Inc.*, 133 Ohio App.3d 102, 108 (10th Dist.1999). "A defamation claim against a news organization requires proof that (1) the organization made a false statement, (2) the statement was defamatory, (3) the organization published the statement, (4) the plaintiff was harmed as a proximate result of the publication, and (5) the organization acted with the requisite degree of fault in publishing the statement." *Anderson II* at ¶ 9, citing *Am. Chem. Soc.*, 2012-Ohio-4193, at ¶ 77.

{¶ 30} The degree of fault required to prevail on a defamation claim depends, in part, on the plaintiff's status, *i.e.*, whether the subject of the allegedly defamatory statement is a public or private figure. *See Spingola v. Stonewall Columbus, Inc.*, 10th Dist. No. 06AP-403, 2007-Ohio-381, ¶ 10, citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974). A person properly classified as a public official or a public figure may recover for defamation only on clear and convincing evidence that the defendant acted with actual malice—that is, with

No. 23AP-647

knowledge that the defamatory statement was false or with reckless disregard of whether it was false or not. *Gertz* at 342, citing *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964), and *Curtis Publishing Co. v. Butts*, 388 U.S. 130 (1967). In *Gertz*, however, the United States Supreme Court left it to the states to "define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual," requiring only that the states "do not impose liability without fault." *Id.* at 347. The parties here agree that the Andersons are private figures.

{¶ 31} In Ohio, the appropriate measure of fault in private-figure defamation cases is negligence: "in private-figure defamation actions, where a prima facie showing of defamation is made by a plaintiff, the plaintiff must prove by clear and convincing evidence that the defendant failed to act reasonably in attempting to discover the truth or falsity or defamatory character of the publication." *Lansdowne* at 180. The Supreme Court of Ohio held in *Anderson II* that the *Lansdowne* negligence standard applies to this case. *Anderson II* at ¶ 14.

### 2. Qualified Privilege

{¶ 32} If a claimant establishes a prima facie case of defamation, the defendant may invoke as a defense from liability a conditional or qualified privilege. *Jackson v. Columbus*, 117 Ohio St.3d 328, 331, 2008-Ohio-1041, ¶ 9, citing *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 7 (1995), citing *Hahn v. Kotten*, 43 Ohio St.2d 237, 243 (1975). The defense of privilege, which is a matter of public policy that furthers the constitutionally guaranteed right of free speech, recognizes that certain communications do not fall "within the rules imposing liability for defamation." *Costanzo v. Gaul*, 62 Ohio St.2d 106, 108 (1980). "A privileged communication is one which, except for the occasion on which or the circumstances under which it is made, would be defamatory, and actionable." *Id.*, citing 50 American Jurisprudence 2d, Libel and Slander, Section 192, at 695 (1995).

{¶ 33} A qualified privilege may arise under the common law or by statute. *See Miller v. J.B. Hunt Transp., Inc.*, 10th Dist. No. 13AP-162, 2013-Ohio-3892, ¶ 24. The common-law qualified privilege shields a defendant from liability when "society's interest in compensating a person for loss of reputation is outweighed by a competing interest," including the public interest, "that demands protection." *A & B-Abell Elevator Co.* at 8. In *Hahn*, the Supreme Court of Ohio explained:

No. 23AP-647

> " 'A publication is conditionally or qualifiedly privileged where circumstances exist, or are reasonably believed by the defendant to exist, which cast on him the duty of making a communication to a certain other person to whom he makes such communication in the performance of such duty, or where the person is so situated that it becomes right in the interests of society that he should tell third persons certain facts, which he in good faith proceeds to do. * * * The essential elements of a conditionally privileged communication may accordingly be enumerated as good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only.' "

43 Ohio St.2d at 245-46, quoting *West v. People's Banking & Trust Co.*, 14 Ohio App.2d 69, 72 (4th Dist.1967), quoting 33 American Jurisprudence, Libel and Slander, Section 126, at 124 (1941). The qualified privilege "does not change the actionable quality of the publication," but it heightens the degree of fault that a plaintiff must establish to recover on a defamation claim. *A & B-Abell Elevator Co.* at 9.

{¶ 34} A defendant exceeds the qualified privilege protecting the making of defamatory statements when the defendant makes the statements with " 'actual malice,' that is, with knowledge that the statements are false or with reckless disregard of whether they were false or not." *Hahn* at paragraph two of the syllabus. The issue of malice, however, does not arise until a privilege has been found to exist. *A & B-Abell Elevator Co.* at 11.

{¶ 35} Whether an allegedly defamatory statement is subject to a qualified privilege is a question of law for the court when, as here, the content of the alleged defamatory statement and the circumstances of the occasion for the communication are not in dispute.[3] *Id.* at 7; *Worrell v. Multipress, Inc.*, 45 Ohio St.3d 241, 248-49 (1989) (" 'where the publication is claimed to be privileged the question whether or not the occasion gives the privilege * * * is also for the court' "), quoting *Mauk v. Brundage*, 68 Ohio St. 89 (1903),

---

[3] "It is only where the content of the defamatory communication and/or the circumstances under which it is published are unclear under the evidence that the question of whether a qualified privilege exists is one for the jury." *McCartney v. Oblates of St. Francis deSales*, 80 Ohio App.3d 345 (6th Dist.1992). For example, in *Boden v. Anaconda Minerals Co.*, 757 F.Supp. 848, 856 (S.D.Ohio 1990), the existence of a qualified privilege was a factual question, in part because defendants failed to establish the content of the communication they relied on to establish an occasion giving rise to a privilege. *See also Sullins v. Raycom Media, Inc.*, 8th Dist. No. 99235, 2013-Ohio-3530, ¶ 29, 32 (finding genuine issues of material fact as to whether media defendant was entitled to a privilege); *Baker v. Spinning Rd. Baptist Church*, 2d Dist. No. 17052, 1998 Ohio App.LEXIS 4201, *14-15 (Sept. 11, 1998) (reversing summary judgment based on qualified privilege because question of fact remained as to whether the publication was made only to proper recipients).

No. 23AP-647

paragraph two of the syllabus. We review errors of law de novo. *Morrison*, 142 Ohio App.3d at 260, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm.*, 64 Ohio St.3d 145, 147 (1992).

### 3. Qualified Privilege Does Not Apply

{¶ 36} The Andersons direct this court to *Gilbert v. WNIR 100 FM*, 142 Ohio App.3d 725 (9th Dist.2001), as support for their argument that the trial court erred by applying the qualified privilege. Gilbert, an Akron, Ohio attorney, claimed that allegations made during radio broadcasts falsely implicated him in the murder of a local doctor, and he sued WNIR 100 FM ("WNIR") and several of its employees for defamation. The trial court entered summary judgment for defendants-appellees on Gilbert's defamation claim, based on its determination that Gilbert was a public figure who was required to present clear and convincing evidence of actual malice, which he did not do.

{¶ 37} On appeal, the Ninth District Court of Appeals agreed with Gilbert that the trial court erred as a matter of law when it found him to be a public figure, but it went on to consider whether Gilbert was nevertheless required to present evidence of actual malice to overcome a qualified privilege, an alternative theory that defendants-appellees argued for affirming the trial court's judgment. The Ninth District found no applicable qualified privilege. After citing the elements necessary to establish a qualified privilege, the Ninth District stated, "News media have generally been found to possess a qualified privilege to report *actual* facts concerning the commission of a crime, the arrest of an accused person, and the charges brought against that person, so long as [the] report does not assert that the accused is guilty of the crime charged." (Emphasis sic.) *Id.* at 739. It continued, "the reports of Mr. Gilbert's arrest and flight from the jurisdiction were untrue," and defendants-appellees failed to show they had obtained the substance of those reports from a police source. *Id.* at 740. Rather, Gilbert submitted evidence indicating that "the statements were speculation by those who called WNIR radio talk programs and WNIR personnel" and that the station and its employees therefore "did not report any official action or proceeding." *Id.* Because Gilbert was a private figure and the qualified privilege did not apply, the Ninth District concluded that Gilbert was not required to prove actual malice to recover for defamation, and it reversed the trial court's judgment.

{¶ 38} This court addressed the application of a qualified privilege in *Miller*, 2008-Ohio-1280. We described the underlying facts in that case as follows:

No. 23AP-647

> [T]he Columbus Dispatch, under the auspices of [Central Ohio] Crime Stoppers, published a "Most Wanted" bulletin that identified individuals with outstanding warrants. As part of his responsibilities as the Columbus Division of Police's liaison with Crime Stoppers, Detective [Gerald] Milner selected the individuals to be featured. Because a warrant previously issued against plaintiff [Miller] for bribery and intimidation of a victim, plaintiff's name and photograph were included in the publication. At the time of publication, however, the warrant no longer was valid, and plaintiff had no other outstanding warrants against her. Her attorney contacted Crime Stoppers, and a retraction was issued in the * * * Columbus Dispatch.

*Id.* at ¶ 2. Miller brought defamation claims against Crime Stoppers, the City of Columbus, Detective Milner, and the Columbus Dispatch. The Columbus Dispatch was dismissed as a defendant, and the trial court granted summary judgment in favor of the remaining defendants. The trial court determined that the city and Detective Milner were entitled to political-subdivision immunity and, as relevant here, a qualified privilege shielded Crime Stoppers from liability, because Miller "set forth no evidence that Crime Stoppers failed to act in good faith in submitting [her] information to the newspaper for publication." *Id.* at ¶ 4.

{¶ 39} On appeal, Miller challenged the trial court's application of qualified privilege and particularly its conclusion that Crime Stoppers acted in good faith when it passed information concerning the existence of an arrest warrant from Detective Milner to the Columbus Dispatch. This court affirmed the trial court's application of qualified privilege to Crime Stoppers, finding "all of the *Hahn* factors for the qualified privilege defense [were] satisfied." *Id.* at ¶ 20. After noting the absence of evidence that Crime Stoppers lacked good faith in publishing the most wanted list, we held that Crime Stoppers "possessed a proper interest anchored in its desire to assist the police in reducing crime" and that its publication "was limited to that interest and was made on a proper occasion in the manner designed to serve that interest," and only to "parties who could facilitate that interest." *Id.* at ¶ 18, 19. Finally, as to whether Crime Stoppers acted with actual malice, we stated, "Crime Stoppers' rel[iance] upon a uniformed police officer to check the validity of warrants that his own department issued does not constitute reckless disregard in the absence of any evidence such reliance might be misplaced." *Id.* at ¶ 21. Finding no evidence of misplaced

No. 23AP-647

reliance on Detective Milner, we affirmed the trial court's entry of summary judgment in favor of Crime Stoppers.

{¶ 40} WBNS contends that *Miller* alone warrants affirmance of the trial court's application of qualified privilege here. *Miller*, however, is distinguishable from this case. In *Miller*, Crime Stoppers passed along only the information it had obtained from the police, which included the false statement that Miller had a valid, outstanding arrest warrant. The false statement originated from Detective Milner, and Crime Stoppers accurately relayed the information from Detective Milner to the Columbus Dispatch. Unlike Crime Stoppers in *Miller*, WBNS did not receive false information from the Columbus Division of police. Nor did it accurately report only the information contained in the Media Information report. The Media Information report described the individuals in the hallway photograph only as persons "who may have been involved" in the waterpark robbery (Def.'s Trial Ex. A-1 at 5.), but WBNS described Aaron and Arron Anderson as the "two men who robbed an 8-year-old girl at gunpoint" and as the "suspects" who "took off in a P-T [C]ruiser" after committing the robbery, (Pls.' Trial Ex. 5B.). WBNS also posted the hallway photograph of the Andersons on its website and Facebook page with the headline, "Robbers Put Gun to Child's Head and Steal Hoverboard" (Def.'s Trial Ex. A-6, at 1.), whereas the Media Information report did not identify the people shown in the hall photograph as "robbers." Nor did it state, as did WBNS, "there was a woman with the two male suspects" about whose connection to the robbery investigators were unsure. *Id.* Unlike in *Miller*, the falsity of the published statements in this case did not originate with the police, but arose from WBNS's *alteration* of information it received from the Columbus Division of Police. The facts of this case are more akin to those in *Gilbert*, where the media defendant published defamatory statements about the plaintiff that it did not obtain from a police source and that were, therefore, not protected by qualified privilege. *See Gilbert* at 740 ("Construing the facts in a light most favorable to the nonmoving party, the statements broadcast by WNIR were completely false and did not report any official action or proceeding.").

{¶ 41} The trial court did not discuss the elements set out in *Hahn* for application of a qualified privilege: "good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." (Emphasis omitted.) *Hahn* at 246. Instead, it focused solely on the public

No. 23AP-647

interest in the story of the waterpark robbery and in apprehending criminals. Public interest alone is not sufficient to establish a qualified privilege, so we look to the *Hahn* factors.

{¶ 42} "The concept of a qualified privilege is based upon public policy and the need to protect the publication of a communication made in good faith." *Jacobs v. Frank*, 60 Ohio St.3d 111, 114 (1991), citing *Hahn* at 245-46. If a statement is not made in good faith, the qualified privilege is inapplicable. *Utz v. Stovall*, 11th Dist. No. 2012-P-0135, 2013-Ohio-4299, ¶ 50 (affirming the trial court's determination that defendant did not make her statements about plaintiff in good faith and that qualified privilege did not apply). Yet the Andersons acknowledge guidance from the Supreme Court of Ohio that "[t]he issue of 'good faith' necessary to establish the privilege should not be confused with the issue of 'state of mind' necessary to defeat it." *A & B-Abell Elevator Co.*, 73 Ohio St.3d at 11, citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968).

{¶ 43} The Supreme Court of Ohio explained:

> In determining whether an occasion is privileged * * *, we are not concerned with the motive of a particular defendant. *See, e.g., Webster v. Sun Co., Inc.*, (C.A.D.C.1986), 790 F.2d 157, 161. Instead, we "have to deal with the law of general averages based on human experience and must shape a general policy to deal with a general problem. On the other hand, in the question of abuse of privilege, the problem is one of particulars." 2 Harper & James, The Law of Torts [(1956)] 214, Section 5.25.

*A & B-Abell Elevator Co.* at 10. " 'All that is necessary to entitle such communications to be regarded as privileged is, that the relation of the parties should be such as to afford reasonable ground for supposing an innocent motive for giving information, and to deprive the act of an appearance of officious intermeddling with the affairs of others.' " *Hahn* at 246, quoting *West*, 14 Ohio App.2d at 74, citing 1 Harper & James, *The Law of Torts* (1956) 445, Section 5.26.

{¶ 44} Contrasting the facts of this case with the facts of *Miller*, the Andersons argue that WBNS did not act in good faith, because it published false accusations against the Andersons that were not included in the information it had received from the Columbus Division of Police—the only information WBNS relied on in preparing the relevant broadcasts and publications. While WBNS's publication of defamatory statements not taken from the Media Information report is of utmost relevance to whether WBNS is

entitled to a qualified privilege, we disagree with the Andersons' assertion that it demonstrates a lack of good faith in this context. As the Supreme Court stated in *A & B-Abell Elevator Co.*, whether an occasion is privileged depends not on the defendant's motive but on "the law of general averages based on human experience." *A & B-Abell Elevator Co.* at 10. Applying *Hahn*, we conclude that the relationship between WBNS and the viewing public, to whom it published the statements regarding the Andersons, is such "as to afford reasonable ground for supposing an innocent motive for giving information." *Hahn* at 246.

{¶ 45} The Andersons do not rest their argument against application of a qualified privilege solely on the element of good faith, however. They also argue that qualified privilege does not apply because WBNS's defamatory statements about the Andersons were not reasonably calculated to protect or further the shared interest between WBNS and the viewing public and were not made in a proper manner. With those assertions, we agree.

{¶ 46} The qualified privilege "attaches to the situation giving rise to the communication." *A & B-Abell Elevator Co.* at 8-9. Here, that situation was the Columbus Division of Police's request that media outlets enlist the public's help to identify the persons shown in the hallway photo, "who may have been involved" in the robbery. (Def.'s Trial Ex. A-1 at 5.) The Andersons do not dispute that both WBNS and the viewing public share a common interest in assisting the police in identifying persons who may have committed an armed robbery. And had WBNS published the information the Columbus Division of Police had provided, asking for assistance in identifying persons who may have been involved in the robbery, we would easily conclude that the publication was limited in scope to the common interest and made on a proper occasion, in a proper manner, to the proper parties. But because WBNS instead embellished and materially deviated from the information furnished by the Columbus Division of Police and, of its own accord, falsely accused the Andersons of committing a violent crime against a child, we conclude that those statements were not reasonably calculated to protect or further the shared interest. WBNS was therefore not entitled to the protection of the qualified privilege.

{¶ 47} "A prescription common to all classifications of the rule of qualified privilege is the basic requirement of fairness and accuracy." *O'Neal v. Tribune Co.*, 176 So.2d 535, 547 (Fla.App.1965). In *O'Neal*, the court held:

No. 23AP-647

> [W]here the public interest is concerned, it is within the conditional privilege of a newspaper to publish in good faith, as current news, matters which involve open violations of law or public misconduct which justifies police interference, and matters in connection with and in aid of the prosecution of inquiries regarding the commission of a crime, even though the publication may reflect on the actors and tend to bring them into public disgrace or contempt. However, it is necessary that the statement not go further than a mere report of the news by making charges directly or by inference, insinuation, or assumption, that one is guilty of a crime[.]

*Id.* at 547. *See also Larson v. Gannett Co., Inc.*, 940 N.W.2d 120, 133 (Minn.2020) (holding that qualified privilege "protects news reports that accurately and fairly summarize statements about a matter of public concern made by law enforcement officers during an official press conference and in an official news release"); *Jones v. Garner*, 250 S.C. 479, 487 (S. Carolina 1968) (qualified privilege "extends only to a report of the contents of the public record and any matter added to the report by the publisher, which is defamatory of the person named in the public records, is not privileged").

{¶ 48} The Ohio General Assembly has incorporated the requirements of fairness and accuracy into Ohio's statutory fair report privilege, set out in R.C. 2317.05. It provides, in part:

> The publication of a fair and impartial report of the return of any indictment, the issuing of any warrant, the arrest of any person accused of crime, or the filing of any affidavit, pleading, or other document in any criminal or civil cause in any court of competent jurisdiction, or of a fair and impartial report of the contents thereof, is privileged[.]

R.C. 2317.05 does not apply here, because WBNS's reporting did not concern the return of an indictment, the issuance of a warrant, an arrest of a person accused of crime, or the filing of an affidavit, pleading, or other document in a criminal or civil case, but we nevertheless find instructive the requirement in R.C. 2317.05 that the privilege extends only to fair and accurate reporting of official conduct.

{¶ 49} A publication is privileged under R.C. 2317.05 if it is a substantially accurate report of the official record. *Oney*, 39 Ohio St.3d 103, at paragraph two of the syllabus. "A publication is substantially accurate if it conveys the essence of the official record to the ordinary reader, *without misleading the reader by the inclusion of inaccurate extra-record information* or the exclusion of relevant information in the record." (Emphasis added.) *Id.*

at paragraph three of the syllabus. The inclusion of additional information does not automatically destroy the privilege granted by R.C. 2317.05, " 'as long as the "gravamen," "gist" or "sting" or "substance" of the underlying proceeding or report * * * is substantially correct.' " (Footnotes omitted in *Oney*). *Id*. at 106, citing Elder, *The Fair Report Privilege*, Section 1.21, at 193 (1988). *See also Alsop v. The Cincinnati Post*, 24 Fed.Appx. 296, 298 (6th Cir.2001) (applying Ohio law and concluding that the distinction between the United States Attorney's press release, which stated that Alsop " 'ran a drug conspiracy out of his store involving the distribution of crack cocaine,' " and the newspaper's report that Alsop "sold" cocaine out of his store involved "mere semantics" and was not misleading).

{¶ 50} In line with cases that have required fairness and accuracy before applying the common-law qualified privilege, we conclude that any qualified privilege here would extend only to a fair and accurate report of the Media Information report issued by the Columbus Division of Police. And having concluded that WBNS's reports were not fair and accurate reports of the Media Information report, because they accused the Andersons of being the robbers who stole from an eight-year-old girl at gunpoint and fled in a white PT Cruiser, we conclude as a matter of law that WBNS's statements went beyond the scope of the applicable common interest and that the qualified privilege does not apply to WBNS's defamatory statements. Therefore, the Andersons were not required to prove that WBNS acted with actual malice to recover on their defamation claims; as to fault, they needed only prove that WBNS acted negligently. As the jury unanimously found by clear and convincing evidence that WBNS acted negligently in making false statements about the Andersons, the Andersons are therefore entitled to a determination of damages. Accordingly, we sustain the Andersons' second assignment of error.

### C. Third Assignment of Error

{¶ 51} In their third assignment of error, the Andersons maintain that the trial court abused its discretion by refusing to submit to the jury an interrogatory asking whether WBNS acted with reckless disregard as to whether its statements were true or false. The trial court submitted a jury interrogatory asking, as to each Anderson appellant, whether WBNS acted with actual malice, and it instructed the jury that actual malice in this context means *either* knowledge of a statement's falsity or reckless disregard as to its truth or falsity. Yet the Andersons argue that the trial court should have instead submitted separate jury interrogatories asking (1) whether WBNS acted with knowledge of falsity, and (2) whether

No. 23AP-647

WBNS acted with reckless disregard to whether its statements were true or false. In light of our determination under the Andersons' second assignment of error that qualified privilege is not applicable in this case and that the Andersons were not required to prove that WBNS acted with actual malice, the Andersons' third assignment of error is moot.

## IV. CONCLUSION

{¶ 52} For these reasons, we overrule the Andersons' first assignment of error, sustain their second assignment of error, and overrule as moot their third assignment of error. Having concluded that the Andersons are entitled to a determination of damages based on the jury's answers to the jury interrogatories, including the jury's determination that WBNS was negligent in publishing false statements about the Andersons that the trial court determined were defamatory, we reverse the judgment of the Franklin County Court of Common Pleas and remand this matter to that court for further proceedings consistent with this decision and the law. Because we are reversing the trial court's judgment, WBNS's cross-appeal, regarding the division in the final judgment entry of unpaid court costs, is moot.

*Judgment reversed;*
*cause remanded.*

LUPER SCHUSTER and EDELSTEIN, JJ., concur.

————————